Filed 6/21/16

CERTIFIED FOR PARTIAL PUBLICATION[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. ALFONSO PUERTO, Defendant and Appellant. | B263411 (Los Angeles County Super. Ct. No. BA429371) |

APPEAL from a judgment of the Superior Court of the County of Los Angeles, Norm Shapiro, Judge. Affirmed as modified.

Pamela J. Voich, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, Corey J. Robins, Deputy Attorney General, for Plaintiff and Respondent.

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, only the first and second full paragraphs on page 2, part II of the Discussion, and the Disposition are certified for publication.

A jury convicted defendant and appellant Alfonso Puerto of criminal threats (Pen. Code, § 422, subd. (a)[1]) and battery (§ 242), and found true a criminal street gang allegation applied to both offenses (§§ 186.22, subd. (b)(1)(B) & 186.22, subd. (d)). The trial court found true the allegation that defendant had a prior felony conviction within the meaning of the "Three Strikes" law (§§ 667, subds. (a)-(d) & 1170.12, subds. (b)-(i)) and four prior felonies within the meaning of section 667.5, subdivision (b). Defendant was sentenced to state prison for 11 years and awarded 306 days of sentence credit consisting of 153 days of actual custody and 153 days of conduct credit.

Defendant contends insufficient evidence supports the jury's criminal street gang allegation findings, the prosecution did not plead or prove the prior strike conviction, and the trial court erred in calculating his award of sentence credit. We affirm the criminal street gang allegation and prior strike conviction findings, and order the minute order for defendant's sentencing hearing and the abstract of judgment modified to reflect 416 days of sentence credit consisting of 208 days of actual custody and 208 days of conduct credit.

## BACKGROUND

### I. Prosecution Case

About 9:30 p.m., on September 13, 2014, Brad Varela walked his mother, Fany Mayorga, home from work. When they were in the area of Sixth and Union Streets, they encountered defendant and another man. Defendant and his companion spoke to one another. Defendant said Varela was a "gangster" and identified Varela's alleged gang. Varela said he did not "gangbang." Defendant's companion asked Varela, "You know what hood is this?" Varela responded, "Yes." He asked Varela, "Where are you from?" Varela understood the inquiry to be gang-related. Varela responded he was from "nowhere." Defendant told his companion to hit Varela because Varela was from a gang.

---

[1] All statutory citations are to the Penal Code unless otherwise noted.

2

Defendant's companion complied, punching Varela in the mouth and causing Varela to fall to the ground.

Mayorga said, "Leave or we're going to call the cops." Defendant's companion left. Defendant said, "Go ahead and call the police, they are not going to do anything." He also said, "This is my hood." Varela and Mayorga went to the police station and reported the incident.

The prosecution based a battery charge on the September 13, 2014, incident. The jury acquitted defendant of that charge.

The next day, September 14, 2014, defendant approached Varela on the street. Defendant accused Varela of being a "claimer" and said he was going to stab Varela. He said if Varela kept "walking around in his 'hood and everything that he was going to bring his homeboys to come and like, you know, like f [him] up." Defendant was going to have someone stab Varela, and have his homeboys "really beat [him] up." Defendant said, "This is my 'hood," and he did not want Varela in his "'hood" any longer. Defendant said he was from the "Rockwood 13" (Rockwood) gang and punched Varela in the face. Varela went to his mother's place of employment, and she accompanied him to the police station. Defendant was later arrested. Defendant's threats caused Varela to be afraid, and he did not leave his home for weeks.

Los Angeles Police Department Officer Brian Hegemier testified as the prosecution's expert on the Rockwood gang. He testified the area of Sixth and Union Streets fell into Rockwood's territory. Defendant was an admitted Rockwood gang member.

Hegemier explained that a "claimer" was a "wanna-be"—a person who was not, but claimed to be, a member of a gang. The consequences of falsely claiming to be a Rockwood gang member included telling the "claimer" to stop, committing battery on the claimer, "going after" family members, threats to the "claimer" or his family members, and the infliction of great bodily injury.

According to Hegemier, to increase the chances a gang could commit crimes within its territory without getting caught, it was important for the gang to instill fear in,

3

and to intimidate, the community.  Thus, it was important for the Rockwood gang to convey to the community that the members of its gang could hurt them without getting into trouble.  Committing criminal threats and battery against a specific person benefited the Rockwood gang because it "broadcast[ed] to citizens and victims that these specific gang members of this gang are relentless in controlling a specific territory, and they—by committing such bolsterous (sic) acts of violence, it shows to these victims that they are willing to carry through with these threats."

Hegemier testified a gang member builds a reputation within his gang by committing crimes.  The more violent the crime, the more clout the gang member earns within the gang.  A gang member's reputation is also enhanced by making criminal threats.

The prosecutor stated hypothetical sets of facts for Hegemier based on Varela's September 14, 2014, encounter with defendant, and asked if the battery and "the words uttered" were for the benefit of or in association with the Rockwood criminal street gang. Hegemier responded, "Yes."  He testified, "I believe it . . . benefits the Rockwood gang, based on the fact that these individuals are relentless in controlling a specific area through these various acts of crime.  [¶]  Criminal threats is a crime that is committed on a more regular basis within these neighborhoods to show these victims and rival gang members that they are, you know, willing to commit these specific crimes, to continue to have that continuous atmosphere of fear and intimidation within the community."  He further testified that fear and intimidation in the community allowed Rockwood to commit other crimes.

## II.    Defense Case

Bill Sanders, Ph.D., a professor of criminal justice at California State University, Los Angeles, testified as the defense expert on gangs.  In preparing for his testimony, among other things, he reviewed the case file and interviewed defendant.  He opined defendant was not an active member of a criminal street gang because defendant was 44

years old, had not lived in the Rockwood gang's territory for about 20 years, had been in and out of prison and jail, and was homeless when he was arrested.

Sanders had not done any research about the Rockwood gang and had not interviewed any Rockwood gang members. He did not know the gang's territory, how many members were in the gang, the names of any members, or the names of any of the gang's cliques. If defendant said, "This is Rockwood," "I'm going to stab you," and "things of that nature," "it can be considered" to have been said for the benefit of the gang.

## DISCUSSION

### I.     The Jury's Gang Allegation Findings

Defendant argues insufficient evidence supports the jury's gang allegation findings.[2] He contends the evidence fails to show either that he acted for the benefit of or in association with a gang, or that he acted with the intent to promote the criminal activities of a gang. Sufficient evidence supports the findings.

### A.  *Standard of Review*

"'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' (*People v. Lindberg* (2008) 45 Cal.4th 1, 27 [82 Cal.Rptr.3d 323, 190 P.3d 664].) We determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could

---

**2**      Defendant states the gang allegation findings were under section 186.22, subdivision (b)(1)(B) as to both offenses. Instead, as noted above, the jury found true the gang allegation as to the criminal threats offense under subdivision (b)(1)(B) of section 186.22, and as to the battery offense under subdivision (d) of section 186.22. The substantive differences between the subdivisions are not relevant to our evidentiary aanalysis.

have found the essential elements of the crime beyond a reasonable doubt.' (*Jackson v. Virginia* (1979) 443 U.S. 307, 319 [61 L.Ed.2d 560, 99 S.Ct. 2781].)  In so doing, a reviewing court 'presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' (*People v. Kraft* (2000) 23 Cal.4th 978, 1053 [99 Cal.Rptr.2d 1, 5 P.3d 68].)" (*People v. Edwards* (2013) 57 Cal.4th 658, 715.) "A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict. [Citation.]" (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)  We review a claim of insufficient evidence to support a gang allegation finding under the same standard of review.  (*People v. Villalobos* (2006) 145 Cal.App.4th 310, 321-322.)

### B.  Application of Relevant Principles

Both subdivision (b)(1)(B) and subdivision (d) of section 186.22 apply to criminal offenses "committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members."  "'Expert opinion that particular criminal conduct benefited a gang' is not only permissible but can be sufficient to support the Penal Code section 186.22, subdivision (b)(1), gang enhancement.  [Citation.]" (*People v. Vang* (2011) 52 Cal.4th 1038, 1048; *People v. Albillar* (2010) 51 Cal.4th 47, 63 ["Expert opinion that particular criminal conduct benefited a gang by enhancing its reputation for viciousness can be sufficient to raise the inference that the conduct was 'committed for the benefit of . . . a[ ] criminal street gang' within the meaning of section 186.22(b)(1)"].)

Defendant contends insufficient evidence supports the jury's finding that he committed the criminal threats and battery for the benefit of, at the direction of, or in association with the Rockwood gang.  The evidence shows defendant, an admitted member of the Rockwood gang, approached Varela on September 14, 2014, and accused him of being a "claimer"—i.e., a person falsely claiming to be a member of a gang. Defendant threatened to stab Varela or have someone else stab him.  He further threatened to have his "homeboys" beat Varela.  Defendant announced he was a member

6

of the Rockwood gang, stated that the area was his "'hood," and indicated he did not want Varela in his "'hood." Defendant then punched Varela in the face. Hegemier explained that to increase the chances, the Rockwood gang could commit crimes within its territory without getting caught, it was important for the gang to instill fear in, and to intimidate, members of the community by conveying to them that gang members could hurt them without getting into trouble. According to Hegemier, defendant's offenses benefited the Rockwood gang because such crimes instilled fear in and intimidated the community thus allowing the gang to control its claimed territory and commit crimes. This evidence is sufficient to support the jury's finding defendant committed the offenses for the benefit of the Rockwood gang. (*People v. Vang, supra,* 52 Cal.4th at p. 1048; *People v. Albillar, supra,* 51 Cal.4th at p. 63; *People v. Mendez* (2010) 188 Cal.App.4th 47, 56-57 [evidence a defendant announced his gang's name during the commission of a crime supports a determination there is sufficient evidence to support a finding the crime was committed to benefit a gang].)

Defendant argues the events of September 14, 2014, reasonably can be seen as him chasing a suspected gang member out of his neighborhood and, thus, he committed the offenses for personal reasons and not to benefit the Rockwood gang. We review the evidence in the light most favorable to the jury's gang allegation findings to determine whether a reasonable juror could have found the gang allegations true, and not to determine whether a reasonable juror could have found the gang allegations not true. (See *People v. Edwards, supra,* 57 Cal.4th at p. 715.) Moreover, if defendant's motive in committing the crimes against Varela was for a purely personal reason—i.e., to rid his neighborhood of a suspected gang member—there would have been no reason to announce his gang's name. By announcing he was from the Rockwood gang, defendant demonstrated he committed the offenses to benefit his gang.[3]

---

[3] Defendant attempts to minimize the importance of Varela's testimony that defendant announced his gang membership during the commission of the offenses. He suggests the evidence should be disregarded, claiming the "prosecutor led Varela along . . . " to give the challenged testimony and inferring Varela learned of defendant's

7

Defendant contends insufficient evidence supports the jury's finding he committed the offenses with the specific intent to promote, further, or assist in criminal conduct by the Rockwood gang because Hegemier did not offer an opinion on defendant's intent and the prosecution's case was based solely on the fact that defendant previously admitted he was a Rockwood gang member. But, a gang expert is not permitted to testify that a specific individual had a specific intent. (*People v. Killebrew* (2002) 103 Cal.App.4th 644, 657, disapproved on another ground in *People v. Vang, supra,* 52 Cal.4th at pp. 1047-1049.)

We recognize there was no evidence defendant was acting with another proven gang member. But, such evidence is not a prerequisite to a legitimate finding that defendant had the specific intent to promote, further, or assist in criminal conduct by gang members. (See *People v. Rios* (2013) 222 Cal.App.4th 542, 572 [a lone actor may be subject to the gang enhancement].) The particulars of defendant's actions, especially in light of the evidence explaining the definition of a "claimer," were indicative of defendant's specific intent to facilitate criminal conduct committed by his gang.

By calling Varela a "claimer," defendant went so far as to use gang vernacular to explain to Varela that he was angry with Varela for being present in an area controlled by defendant's gang[4] and falsely professing to be a Rockwood member. Based on this evidence, a rational jury could conclude defendant, as a representative of the Rockwood gang, had the specific intent to assist or promote Rockwood's criminal conduct by

gang membership not from defendant but from the police or the prosecution. Because defendant did not object to Varela's testimony concerning defendant's claimed gang membership and does not now argue it was inadmissible, he has forfeited his argument that the evidence should not be considered. (Evid. Code, § 353.)

Defendant also contends Hegemier's expert opinion lacked foundation. He made no such objection in the trial court and thus has forfeited his claim on appeal. (Evid. Code, § 353; *People v. Hinton* (2006) 37 Cal.4th 839, 896-897.) Moreover, as set forth above, Hegemier's testimony was rooted in the facts of the September 14, 2014, incident.

[4] The crimes were committed in the "territory" claimed by the Rockwood gang. Defendant was a 23-year veteran of the gang.

8

attempting to purge the gang's territory of a claimer, i.e., a phony Rockwood gang member who could interfere with the gang's criminal operation.[5]

There is yet another basis to conclude defendant acted with the specific intent to promote or assist Rockwood's criminal conduct. Much of the same evidence demonstrating the crimes were committed for the benefit of the Rockwood is, under these circumstances, indicative of defendant's intent. As stated, in order for the gang to commit crimes without detection it is important that the community refrain from reporting criminal activity. In other words, detection of Rockwood crimes leads to prosecution which, in turn, blunts Rockwood's criminal conduct.

In this respect, the threats made against Varela and the battery he suffered sent precisely the message necessary to assist Rockwood in committing criminal conduct. Varela was a pedestrian in Rockwood gang territory. Defendant (a veteran member of the gang) announced his membership in Rockwood, indicated Varela was in his neighborhood, and threatened/struck Varela. Defendant emphasized he planned to have Varela stabbed and that he would gather his "homeboys" to seriously harm Varela. Such conduct is consistent with an intent to facilitate the ability of Rockwood gang members to commit crimes within the Rockwood territory by instilling fear in the Rockwood community such that community members like Varela are reluctant to report criminal activity.

Reversal based on insufficiency of the evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' [Citation.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) Such a situation is not present in this case.

---

**5**    There is no dispute Rockwood qualified as a criminal street gang. Its vast criminal operation included the commission of crimes such as murder, battery, assault, robbery, and extortion.

## II.    The Trial Court's Prior Strike Conviction Finding

Defendant argues the prosecution did not plead he had a prior strike conviction under the Three Strikes law, but, if it did, it failed to present sufficient evidence to support the strike allegation.  The prosecution alleged defendant had a prior conviction for violating section 245, subdivision (a)(1) (section 245(a)(1))[6] that qualified as a prior strike conviction under the "Three Strikes" law.  Sufficient evidence supports the trial court's finding that the allegation was true.

### A.    *Pleading*

In his opening brief, defendant notes the information does not allege a prior strike conviction and, although the record indicates the prosecution filed an amended information, the record on appeal does not contain an amended information.  We granted the Attorney General's request to augment the record to include a copy of the amended information which includes a prior strike conviction allegation.  Accordingly, the prosecution alleged the prior strike conviction.

### B.    *Proof*

"The People must prove each element of an alleged sentence enhancement beyond reasonable doubt.  [Citation.]"  (*People v. Delgado* (2008) 43 Cal.4th 1059, 1065 (*Delgado*).)  "'[O]fficial government records clearly describing a prior conviction presumptively establish that the conviction in fact occurred, assuming those records meet the threshold requirements of admissibility.  (See Evid. Code, § 664 ["It is presumed that official duty has been regularly performed"].)  Some evidence must rebut this presumption before the authenticity, accuracy, or sufficiency of the prior conviction records can be called into question.'  [Citation.]  [¶]  Thus, if the prosecutor presents, by

---

**6**    Section 245(a)(1) provides:  "Any person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not exceeding one year, or by a fine not exceeding ten thousand dollars ($10,000), or by both the fine and imprisonment."

10

such records, prima facie evidence of a prior conviction that satisfies the elements of the recidivist enhancement at issue, and if there is no contrary evidence, the fact finder, utilizing the official duty presumption, may determine that a qualifying conviction occurred.  [Citations.]"  (*Id.* at p. 1066.)

Defendant argues the assault offense under section 245(a)(1) is not automatically a serious or violent felony under section 667, subdivision (c) or a serious offense under section 1192.7, subdivision (c).  He contends, relying on *Delgado, supra,* 43 Cal.4th at page 1067, such an assault may constitute a violent or serious offense under those sections only if the defendant personally used a firearm or a dangerous or deadly weapon, or personally inflicted great bodily injury.  The prosecution failed to prove the prior strike allegation, he argues, because it did not adduce evidence regarding either of those qualifiers.  Defendant's reliance on *Delgado* is misplaced because that case concerned a version of section 245(a)(1) that was not in effect when defendant committed his prior assault offense.

In *Delgado, supra,* 43 Cal.4th 1059, the Supreme Court considered the sufficiency of the abbreviated notation "'Asslt w DWpn'" on an abstract of judgment from a prior conviction to permit the inference that the conviction was for a serious felony.  (*Id.* at p. 1065.)  Delgado's alleged prior conviction was for a violation of section 245(a)(1).  (*Delgado, supra,* 43 Cal.4th at p. 1065.)  The version of section 245(a)(1) in effect when Delgado violated that statute made it a "felony offense to 'commit[] an assault upon the person of another with a deadly weapon or instrument other than a firearm *or* by any means of force likely to produce great bodily injury.'  [Citation.]"  (*Delgado, supra,* 43 Cal.4th at p. 1065.)

The Supreme Court explained, "'[A]ssault with a deadly weapon' is a serious felony.  (§ 1192.7, subd. (c)(31).)  On the other hand, while serious felonies include all those 'in which the defendant *personally inflicts* great bodily injury on any person' (*id.*, subd. (c)(8), italics added), assault merely by *means likely to produce* GBI, without the additional element of personal infliction, is not included in the list of serious felonies.  Hence, as the parties acknowledge, a conviction under the deadly weapon prong of

11

section 245(a)(1) is a serious felony, but a conviction under the GBI prong is not." (*Delgado, supra,* 43 Cal.4th at p. 1065.)

Thus, the court in *Delgado* held, "[I]f the prior conviction was for an offense that can be committed in multiple ways, and the record of the conviction does not disclose how the offense was committed, a court must presume the conviction was for the least serious form of the offense. [Citations.] In such a case, if the statute under which the prior conviction occurred could be violated in a way that does not qualify for the alleged enhancement, the evidence is thus insufficient, and the People have failed in their burden. [Citation.]" (*Delgado, supra,* 43 Cal.4th at p. 1066.)

In this case, in support of defendant's prior strike conviction allegation, the prosecution relied on court records, admitted by the trial court, that showed defendant pleaded nolo contendere to assault in violation of section 245(a)(1) on September 30, 2013, in case number BA411761, for an assault that took place in 2013. In the amended information, the prosecution alleged defendant was convicted on June 18, 2014, in case number BA411761[7] of violating section 245.

In 2011, section 245(a)(1) provided: "Any person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm *or by any means of force likely to produce great bodily injury* shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not exceeding one year, or by a fine not exceeding ten thousand dollars ($10,000), or by both the fine and imprisonment." (Italics added.) That year, the Legislature amended section 245, removing assaults "by any means of force likely to produce great bodily injury" from subdivision (a)(1), and placing them in newly added subdivision (a)(4) of section 245.[8]

---

[7]    The amended information appears to identify the wrong conviction date.

[8]    "According to the Report of the Assembly Committee on Public Safety, the purpose of this change was to permit a more efficient assessment of a defendant's prior criminal history since an assault with a deadly weapon qualifies as a 'serious felony' (see Pen. Code, § 1192.7, subd. (c)(1)), while an assault by force likely to produce great bodily injury does not. (See Assem. Com. on Public Safety, Analysis of Assem. Bill No.

(Stats. 2011, ch. 183, § 1; *People v. Brown, supra,* 210 Cal.App.4th at p. 5, fn. 1.) Thus, the version of section 245(a)(1) in effect when defendant committed the offense for which he pleaded nolo contendere in 2013 (and in effect now), made it a crime to "'commit[] an assault upon the person of another with a deadly weapon or instrument other than a firearm.'" That is, unlike the version of section 245(a)(1) at issue in *Delgado, supra,* 43 Cal.4th at page 1065, the version at issue in this case concerns only assaults with a deadly weapon or instrument other than a firearm, and does not concern assaults by means of force likely to produce great bodily injury—which assaults are now addressed in subdivision (a)(4) of section 245.

Assault with a deadly weapon is a serious felony. (§ 1192.7, subd. (c)(31); *Delgado, supra,* 43 Cal.4th at p. 1065.) Section 1192.7, subdivision (c)(31) does not require personal use of the deadly weapon. Defendant pleaded nolo contendere to "commit[ing] an assault upon the person of another with a deadly weapon or instrument other than a firearm." The version of section 245(a)(1) in effect when defendant committed the assault to which he pleaded nolo contendere in 2013 could not be violated in a way that did not constitute a serious felony under section 1192.7, subdivision (c)(31). Accordingly, sufficient evidence supports the trial court's prior strike conviction finding.

## III. Defendant Was Entitled to 416 Days of Sentence Credit

The trial court awarded defendant 306 days of sentence credit consisting of 153 days of actual custody and 153 days of conduct credit. Defendant correctly points out he was entitled to 416 days of sentence credit consisting of 208 days of actual custody and 208 days of conduct credit.

A defendant is entitled to credit against a state prison term for all days actually spent in custody prior to sentencing. (§ 2900.5, subd. (a).) In addition, a defendant may be entitled to conduct credit pursuant to section 4019. Under section 4019, a defendant earns two days of conduct credit for every two days of actual presentence custody. (§

1026 (2011-2012 Reg. Sess.) as introduced Feb. 18, 2011.)" (*People v. Brown* (2012) 210 Cal.App.4th 1, 5, fn. 1.)

4019, subds. (b), (c), & (f)). In calculating actual days in custody, a defendant is entitled to credit for the day of arrest (*People v. Taylor* (2004) 119 Cal.App.4th 628, 645), partial days, and the day of sentencing (*People v. Browning* (1991) 233 Cal.App.3d 1410, 1412; *People v. Fugate* (1990) 219 Cal.App.3d 1408, 1414).

Defendant contends the record reflects he was arrested on September 14, 2014, and remained in custody until he was sentenced on April 9, 2015, a period of 208 days. We agree. A competency evaluation report in the record refers to a September 14, 2014, Los Angeles Police Department arrest report. Defendant's September 14, 2014, arrest is confirmed by his rap sheet which the prosecution introduced at defendant's trial on the prior conviction allegations. In addition, defendant was in custody for his September 30, 2014, preliminary hearing. A review of the minute orders for the period between from September 30, 2014, to April 9, 2015, shows defendant was continuously in custody. No minute order shows defendant was released from custody.

The number of days from and including September 14, 2014, to and including April 9, 2015, was 208. Accordingly, defendant was entitled to 416 days of sentence credit. (§ 2900.5, subd. (a); § 4019, subds. (b), (c), & (f); *People v. Taylor, supra,* 119 Cal.App.4th at p. 645; *People v. Browning, supra,* 233 Cal.App.3d at p. 1412; *People v. Fugate, supra,* 219 Cal.App.3d at p. 1414.) We order the minute order for defendant's sentencing hearing and the abstract of judgment modified to reflect 416 days of sentence credit consisting of 208 days of actual custody credit and 208 days of conduct credit.

## DISPOSITION

The minute order for defendant's sentencing hearing and the abstract of judgment are ordered modified to reflect 416 days of sentence credit consisting of 208 days of actual custody credit and 208 days of conduct credit. The trial court is to forward a corrected abstract of judgment to the Department of Corrections and Rehabilitation. The judgment is otherwise affirmed.

CERTIFIED FOR PARTIAL PUBLICATION

KUMAR, J.*

We concur:

KRIEGLER, Acting P. J.

BAKER, J.

_____

* Judge of the Superior Court of the County of Los Angeles, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.