Filed 4/1/22  P. v. Hoyt CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Lassen)

----

| | |
|---|---|
| THE PEOPLE, | C093532 |
| Plaintiff and Respondent, | (Super. Ct. No. CR036172) |
| v. | |
| JOSEPH HOYT, | |
| Defendant and Appellant. | |

After the trial court denied his petition for mental health diversion, defendant Joseph Hoyt pled guilty to stealing a car and fleeing police while driving recklessly.  On appeal, he contends counsel provided ineffective assistance by failing to timely submit a recent mental health diagnosis and an adequate treatment plan in support of the diversion petition and by allowing him to accept the plea before the trial court issued a final ruling on the petition.  Finding no merit in these contentions, we affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

I

*Mental Health Diversion Petition*

On July 30, 2018, defendant suffered a psychotic break, became delusional, stole a car in Reno, Nevada, and drove into Lassen County, California, where he led police on a high-speed chase before they rammed him off the road and eventually subdued him. Defendant was charged with fleeing police while driving recklessly, receiving a stolen vehicle, taking a vehicle without the owner's consent, resisting an executive officer, and misdemeanor resisting a police officer.

On April 9, 2019, defendant filed a petition for mental health diversion pursuant to Penal Code[1] section 1001.36. Summarized in and appended to the petition were three psychiatric evaluations of defendant completed shortly after the offense, including two evaluations from Nevada-based providers. According to the evaluations, defendant stated he had been using nitrous oxide on the day of his offense. He had experienced a similar psychotic break while using nitrous oxide in 2017. In both cases, his psychosis cleared after brief treatment with medication and his affect and appearance returned to normal. The evaluations indicated defendant suffered from substance-use disorders and a substance-induced psychotic disorder; he denied other mental health conditions, although he had suffered childhood trauma and his father had bipolar disorder.

The petition acknowledged defendant "suffered a psychiatric break as a result of the use of a hallucinogen and high dose cannabis." But "the resulting psychiatric episode is not a normal and probable consequence of [drug] use." Included with the petition was a Nevada-based provider's "Initial Treatment Plan," dated August 21, 2018, which briefly outlined a medication regimen, follow-up appointments, referrals to substance

---

[1]     Further undesignated section references are to the Penal Code.

abuse counseling and Narcotics Anonymous meetings, and education regarding medication and local crisis services. September 7, 2018 "Progress Notes" from the provider indicated defendant had been participating in therapy, taking medication, and refraining from drug use. The petition stated defendant had been living and working in Reno where he had "incredible family support." He was a "mature and responsible person who is cognizant of his . . . potential serious mental problems should he experiment with a hallucinogen."

The prosecution opposed defendant's petition, arguing he did not meet the statutory criteria for diversion. "By all accounts from all providers," the prosecution argued, "defendant's 'psychotic break' is a direct result from his substance use and abuse. When he is not using drugs, he is a normal functioning member of society. Mental Health diversion is designed for those individuals whose mental disorder played a significant role in the commission of the crime." The prosecution also argued defendant's diagnosis was outdated, the treatment plan did not identify a specific provider, and Lassen County lacked the requisite resources to oversee defendant's diversion.

II

*Initial Hearing*

On October 3, 2019, the court held a hearing for defendant to make a prima facie showing he was eligible and suitable for diversion. Defendant presented his version of the events and described his struggles with mental illness, including his breakdown in 2017, his father's mental illness, and how reality had begun to rupture again in the days leading up to his offense. Defendant stated he had an underlying psychotic disorder and was not under the influence of medication or drugs at the time of the offense. Since then, he had no brushes with law enforcement, had been attending therapy, was weaned off medication, avoided drugs, and, with the support of family, had developed healthy habits to stay stable.

3

The court had concerns about the petition. First, it did not "include a *recent* diagnosis by a qualified mental health expert" required under section 1001.36, subdivision (b)(1)(A). (§ 1001.36, subd. (b)(1)(A), italics added.) Counsel argued the diagnosis need only be recent as to the offense, but the court concluded it must be "recent to the time of the hearing." Counsel agreed to provide an updated evaluation.

Second, the treatment plan was incomplete and unclear. Counsel agreed to provide an updated version.

Finally, the court stated, "one of [its] biggest hang ups" was "that the two psychotic episodes that have been described are substance abuse induced. That's different than mental health. That's a bad reaction, at least in this Court's opinion." This was "the biggest hill that you have to climb." Counsel argued defendant had co-occurring substance use and psychotic disorders, but the court found this was not evident from the documentation.

Recognizing the challenge of obtaining documentation from out-of-state entities and "knowing that this is an informal first-time proceeding in this jurisdiction," the court granted defendant a continuance.

On January 10, 2020, counsel submitted a supplemental psychological report by a Nevada-licensed psychologist, who concluded defendant had an underlying schizotypal personality and that "[t]he use of LSD appears to have triggered both an acute psychotic episode and a persistent delusional disorder."

Counsel submitted an updated treatment plan to the court on February 11, 2020.

III

*Trial Court Ruling*

In a May 26, 2020, hearing, the court stated, "my tentative decision is I'm not comfortable with an out of state mental health diversion" because the court believed it lacked "the power to order out of state mental health providers to report to the court." Counsel argued, "the provisions of the code have control over the defendant, so the Court

4

could put that burden on the defendant saying hey, if you want diversion, you have to make sure your mental health providers cooperate. If they don't, if we ask for this and they don't provide it, I'm going to terminate the diversion. . . . [T]he Court has wide discretion on how to set the matter for the future . . . ." The court responded, "I want to compliment you, you've done really an excellent job in putting forth your position on behalf of your client."

The prosecutor emphasized that, regardless of jurisdictional concerns, defendant did not meet the criteria for diversion. The court responded, "I tend to agree. My concern was that this was more a drug induced action . . . and that drug inducement may have created the mental health issues partially, but my overall impression was the defendant had just gotten into some substances that he probably shouldn't have and that was the primary factor."

The court reiterated that jurisdiction was "one of [its] main concerns," concluding, "I'm just not comfortable with out of state mental health diversion, so that's the ruling of the court." The court stated "there's a lot of room for negotiation" between the parties and scheduled a hearing to either set a trial date or enter a plea disposition.

At the June 23, 2020, trial-setting conference, counsel requested that the court reconsider its ruling on the diversion petition. Although the record does not include a transcript of this hearing, the minute order indicates that the court "addresse[d]" counsel's request, apparently denying it.

IV

*Plea And Sentencing*

On August 11, 2020, defendant, facing a maximum of six years' imprisonment, pled guilty to the taking or driving of a vehicle without consent and fleeing police while driving recklessly in exchange for three years' probation and a county jail term of up to 364 days.

5

In the January 5, 2021, sentencing hearing, the court revisited the issue of diversion: "The mental health diversion aspect of [the case] was very difficult for the Court, I'm not going to hide the pea there. It was, in my opinion, a very difficult choice, but one that I still, at least in my mind, feel was appropriate based upon the evidence and the testimony and that's certainly subject to argument and doubt certainly from the defendant's side because that petition wasn't granted." The court suspended imposition of defendant's sentence and granted him three years' probation, conditioned on serving 17 days in county jail, with credit for time served.

DISCUSSION

Defendant argues counsel provided ineffective assistance by failing to timely submit a recent mental health diagnosis and an adequate treatment plan in support of his mental health diversion petition. Defendant further argues counsel was ineffective in allowing him to accept the plea before the court issued a final ruling on the petition. We find these contentions meritless.

Section 1001.36 authorizes a trial court to grant "pretrial diversion," a postponement of prosecution to allow the defendant to undergo mental health treatment if the defendant meets specified requirements. (§ 1001.36, subds. (a), (c).) Successful completion of diversion results in the dismissal of the original charges. (§ 1001.36, subd. (e).) The eligibility criteria are: (1) the defendant suffers from a recently diagnosed mental disorder enumerated in the statute; (2) the disorder was a significant factor in the commission of the charged offense; (3) "[i]n the opinion of a qualified mental health expert, the defendant's symptoms of the mental disorder motivating the criminal behavior would respond to mental health treatment"; (4) the defendant consents to diversion and waives his right to a speedy trial; (5) the defendant agrees to comply with treatment as a condition of diversion; and (6) the defendant will not pose an unreasonable risk of danger to public safety if treated in the community. (§ 1001.36, subd. (b)(1); see also *People v. Frahs* (2018) 27 Cal.App.5th 784, 789-790.)

6

To prevail on a claim of ineffective assistance of counsel, a defendant bears the burden of showing counsel's performance fell below the prevailing professional norms and it is reasonably probable a more favorable outcome would have resulted but for counsel's failings.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687, [80 L.Ed.2d 674, 693]; *People v. Hoyt* (2020) 8 Cal.5th 892, 958.)  We presume "counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy." (*People v. Lopez* (2008) 42 Cal.4th 960, 966.)  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  (*Strickland*, at p. 697.)

Defendant argues counsel provided ineffective assistance by failing, initially, to provide a recent mental health evaluation and detailed treatment plan.  While the court found the petition lacking at the outset, when it ruled on the petition in May 2020, counsel had satisfied the court's requests and provided it with the necessary documentation, including a supplemental evaluation showing defendant had an underlying mental health disorder that was not substance-induced, a key concern for the court.  Defendant does not explain how expediting delivery of these documents would have yielded a more favorable outcome and thus fails to establish prejudice.

Defendant also asserts that by the time counsel submitted a detailed treatment plan, he "created a new concern for the court" because the plan contemplated out-of-state treatment.  The record shows, however, that while the court raised this concern for the first time in the May 2020 hearing, the issue itself was neither new nor of counsel's creation.  Just over two weeks after his offense, defendant was receiving treatment in Nevada, where he found employment, engaged in therapy under the Nevada-based

7

treatment plan, and received family support.[2]  Defendant does not address the feasibility of an in-state alternative, which apparently would have required him to uproot his life and find a new home, job, and care providers.  Moreover, defendant elides the fact that jurisdiction was but "one of [the court's] main concerns"; throughout the process, the court indicated that diversion simply might not be appropriate for a person whose drug abuse factored so prominently into his ephemeral psychosis.  This concern was based on psychiatric evaluations and defendant's statements at the time of his offense.  Defendant's arguments regarding the treatment plan establish neither deficient performance nor prejudice.

Finally, defendant asserts counsel was ineffective in allowing him to enter his plea before the court issued a "clear ruling" and "actual denial of the petition."  While this argument is unclear[3] and unsupported by argument or authority, we need not address its merits because it is based on a faulty premise.  The record discloses that the court explained its tentative ruling, heard arguments, issued "the ruling of the court," instructed the parties to negotiate, scheduled a follow-up hearing to set trial or enter a plea

---

[2]      Indeed, the minutes of the July 2019 hearing indicate the court, as a condition of exonerating defendant's bail bond, required defendant to live with his mother in Nevada.

[3]      In the heading of his argument, defendant states the deficiency was "allowing [defendant] to enter a plea without first obtaining a clear ruling from the court" on the petition.  (Capitalization omitted.)  But in the body of his argument, defendant adds another dimension, stating, "[b]y allowing [defendant] to plead guilty before there was an actual denial of the petition, counsel rendered ineffective assistance *by foreclosing appellate review of the court's decision*."  (Italics added.)  Defendant does not elaborate on the argument.

Appellate briefs must "support each point by argument and, if possible, by citation of authority."  (Cal. Rules of Court, rule 8.204(a)(1)(B).)  "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as [forfeit]ed." (*Bade v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785.)

8

disposition, denied reconsideration, and during sentencing noted, "that petition wasn't granted." The court's denial of defendant's petition based on its concerns regarding jurisdiction and defendant's suitability for diversion was definitive and final.

Therefore, defendant has failed to carry his burden of demonstrating counsel provided ineffective assistance.

## DISPOSITION

The judgment is affirmed.

/s/

Robie, J.

We concur:

/s/

Blease, Acting P. J.

/s/

Hoch, J.

9