Filed 8/23/19

CERTIFIED FOR PUBLICATION

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E070547 |
| v. | (Super.Ct.No. SWF1500341) |
| JEFFREY EDWARD SAPIENZA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Elaine M. Kiefer, Judge. Affirmed.

Susan S. Bauguess, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and Steve Oetting and Meredith S. White, Deputy Attorneys General, for Plaintiff and Respondent.

On August 31, 2015, pursuant to a plea agreement, defendant and appellant, Jeffrey Edward Sapienza, born in October 1964, pled guilty to criminal threats. (Pen. Code, § 422; count 2.)[1] The court imposed the upper term of three years of imprisonment, but suspended execution of sentence and placed defendant on three years of formal probation. On January 5, 2018, the court found defendant in violation of his probation. On March 23, 2018, the court imposed the three-year suspended sentence and awarded defendant 903 days of custody credits.

On appeal, defendant contends the matter should be conditionally reversed and remanded to the trial court to determine, retroactively, whether defendant qualifies for a pretrial diversion program for individuals diagnosed with qualifying mental disorders pursuant to recently enacted section 1001.36. The People respond that defendant's appeal must be dismissed because the issue raised is outside the scope of his notice of appeal; that section 1001.36 is not retroactive; that even if retroactive, defendant's judgment was already final and, thus, inapplicable; that retroactive application of a pretrial diversion program would effectively vacate defendant's conviction violating the separation of powers doctrine; and that the court had already rejected defendant's mental health defense.[2] We affirm.

---

[1] All further statutory references are to the Penal Code.

[2] We deny the People's request for judicial notice as unnecessary for our resolution of the issues on appeal.

## I. FACTUAL AND PROCEDURAL HISTORY

In January 2015, the victim, born in 1948, drove into his mobilehome park where defendant waved him down. The victim rolled down his window and asked if he could help defendant. Defendant said the victim was not a man of his word; defendant said something about the victim owing defendant $20. The victim assumed defendant was talking about $20 which defendant's mother had lent the victim.

The victim exited his car. Defendant yelled: "'Give me your money or I'm gonna get it from you.'" Defendant quickly approached the victim and touched his nose to the victim's nose and his chest to the victim's chest. Defendant told the victim to give him the money or he was going to hurt and kill the victim. The victim was afraid of defendant.

The victim told defendant he had already paid the money back to defendant's mother. Defendant pointed out a car nearby and said: "'You see the [B]lack guy there inside the car? All I have to do is call him, and he'll do it for me.'" The victim "really got very scared." He interpreted defendant's words as a threat to have the man kill him.

The victim told defendant he was going to call the mobilehome manager and the police. Defendant told him: "'Go ahead.'" The victim got into his car and drove off, but did not return home because he was afraid of alerting the man with whom defendant had threatened him as to the location of his residence. The victim parked and went to the manager's office and told her what had occurred. The manager called the police.

The victim testified that two nights prior to the incident, he found defendant parked in front of his home at 2:00 a.m. The victim was worried because he had been burglarized on several occasions. In May 2016, the victim called the police because defendant contacted him; the victim had a restraining order against defendant.[3]

The People charged defendant by second amended felony complaint with attempted robbery (§§ 664, 211; count 1), two counts of criminal threats (§ 422; counts 2 & 4), misdemeanor elder abuse (§ 368, subd. (c); count 3), and failure to appear (§ 1320.5; count 5). The People additionally alleged defendant had committed the charged offenses while defendant had been released from custody. (§ 12022.1.)

The People and defendant apparently came to a resolution which involved the instant case, four misdemeanor cases, and an admission to a violation of probation. In the instant case, defendant pled guilty to criminal threats (§ 422; count 2) with the understanding defendant would be sentenced to jail for 365 days with credit for 121 days.

The People agreed that defendant "could be accepted into an appropriate dual diagnosis residential treatment program . . . ." Defendant would be required to provide proof that the program had accepted him; if admitted to a rehabilitation program, the court would modify the sentence, release defendant to the program, and allow him to spend the balance of his jail time in the program. The court imposed the upper term of

---

[3] At this point, the court recessed the preliminary hearing. Upon return from the recess, defendant entered his plea.

three years, execution of which the court suspended on the condition that defendant successfully complete the terms and conditions of three years of formal, felony probation.

At a hearing on September 24, 2015, the parties confirmed that defendant had been admitted to the Tibis House Rehabilitation Program through the Recovery Network Resource. Upon defendant's agreement, the court ordered defendant released from jail the next day to complete the balance of his custody time in the residential treatment program. The court noted: "I'm going to give you the opportunity to get clean and sober."

On April 5, 2016, the People filed a misdemeanor complaint and petition for revocation of defendant's probation alleging he had resisted arrest. (§ 148, subd. (a)(1).) At a hearing on May 24, 2016, the court observed: "I . . . have this document he's in inpatient care at Pacific Grove Hospital." Defendant's attorney stated defendant was "on a psychiatric hold."[4] The court noted that the letter indicated defendant would not be released from the hospital until June 3, 2016; defense counsel confirmed this. The court issued a bench warrant, but held it until the second week of June, ordering defendant to appear on June 9, 2016.

---

[4] The letter to which the court referred does not reflect that the hospital was a psychiatric hospital and does not indicate why defendant had been admitted, only that he had been admitted to the hospital.

On June 9, 2016, the People informed the court that they had obtained a letter reflecting defendant was admitted to College Hospital Cerritos on June 8, 2016, with an undetermined release date. Defense counsel stated the reason for the hospitalization "seems to be possibly schizophrenia, for all I know."[5] The court continued the matter and held the warrant until June 21, 2016.

On July 13, 2017,[6] August 8, 2017, October 23, 2017, November 1, 2017, and December 18, 2017, the court continued the matter. On January 5, 2018, the court held a hearing on the petition to revoke defendant's probation.

A Murrieta police officer testified that on March 31, 2016, he responded to a call regarding "a male acting strangely and being aggressive and loud at the bank." When he arrived, he encountered defendant, who was pacing back and forth in front of the bank yelling. Defendant did not appear to have mental issues, but appeared to be agitated.

The officer obtained defendant's name and date of birth; he conducted a records check of defendant. The officer discovered defendant was on formal, felony probation with search terms and that his driver's license had expired on October 22, 2012. The officer found a vehicle associated with defendant and conducted a record check on it. The vehicle had no license plates and was registered to defendant's mother.

---

[5] Again, the letter from the hospital does not reflect that it was a psychiatric hospital or that defendant was admitted for any psychiatric condition.

[6] There is nothing in the record to explain the more than one-year gap between the last continuance and that issued on July 13, 2017.

The officer told defendant he could not drive any vehicle because his license was expired; defendant acknowledged that he could not drive until he had his license reinstated. The officer contacted defendant's mother, who agreed to come drive the vehicle home. He advised defendant to wait for his mother, which defendant agreed to do. The officer left.

Five minutes later, the officer received a call advising him that defendant had driven the vehicle away. The officer drove to defendant's mother's home. A few minutes later, defendant pulled into the mobilehome park in his mother's vehicle.

The officer ordered defendant to stop and get out of the car. Defendant yelled: "'Not this time, Cop.'" Defendant backed away and drove off. The officer quickly found the vehicle parked at the south end of the mobilehome park, adjacent to a golf course; defendant was not in the car. The officer saw defendant running down an embankment onto the golf course. He gave chase and ordered defendant to get on the ground. Defendant eventually complied. Defendant physically resisted while the officer attempted to handcuff him. The officer and his partner had to drive their patrol car onto the golf course because defendant refused to walk.

Defendant's counsel argued defendant was suffering from mental health issues and, therefore, should be returned to probation. The People noted "there has been no evidence of any kind of mental health issues that he suffers from." The court also observed there "really was no evidence during the violation hearing" of mental health

7

issues.  The court found defendant had violated the terms of his probation.[7]  The court then indicated a tentative decision to impose the suspended sentence but observed "there is some history of some type of either mental or substance abuse disorder[s]."  The court continued the matter for sentencing.

On March 23, 2018, defense counsel filed a mitigation letter alleging defendant suffered physical disabilities, including a frontal lobe injury, and post-traumatic stress disorder.  Defense counsel attached to the mitigation letter an unsigned letter alleging defendant had been admitted to a hospital on June 18, 2016, "on an involuntary basis for treatment of profound levels of depression with [an] active suicidal plan and intent [*sic*] with the patient also reporting onset of auditory hallucinations."  At the hearing on the same date, the court imposed the suspended sentence of three years of imprisonment and awarded defendant 903 days of total custody credits.

On May 16, 2018, defendant filed a notice of appeal, checking the boxes reflecting he was challenging the validity of the plea, alleging another basis for the appeal, and requesting issuance of a certificate of probable cause.  Defendant's request for certificate of probable cause alleges contextually vague instances of ineffective assistance of counsel.  The court granted the request for a certificate of probable cause.

---

[7] On the same day, defendant entered a plea to the court in another misdemeanor case and admitted a violation of probation in yet another case.

## II. DISCUSSION

Defendant contends the matter should be conditionally reversed and remanded to the trial court to determine, retroactively, whether defendant qualifies for a pretrial diversion program for individuals diagnosed with qualifying mental disorders pursuant to recently enacted section 1001.36. Defendant maintains that section 1001.36 may be retroactively applied to defendant's case, citing *In re Estrada* (1965) 63 Cal.2d 740, *People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299, and *People v. Frahs* (2018) 27 Cal.App.5th 784 (*Frahs*), review granted December 27, 2008, S252220.[8]

The People respond that defendant's appeal must be dismissed because the issue raised is outside the scope of his notice of appeal; that section 1001.36 is not retroactive; that even if retroactive, defendant's judgment was already final; that retroactive application of a pretrial diversion program effectively vacating defendant's conviction would violate the separation of powers doctrine; and that the court had already rejected defendant's mental health defense. We agree with the People that regardless of whether section 1001.36 may be applied retroactively, such application would be limited to cases which are not final, and that defendant's judgment was final. Therefore, defendant would not be entitled to retroactive application of relief under section 1001.36.

---

[8] The California Supreme Court limited its review of *Frahs* to the following issues: "(1) Does Penal Code section 1001.36 apply retroactively to all cases in which the judgment is not yet final? (2) Did the Court of Appeal err by remanding for a determination of defendant's eligibility under Penal Code section 1001.36?" <https://appellatecases.courtinfo.ca.gov/search/case/mainCaseScreen.cfm?dist=0&doc_id=2268844&doc_no=S252220&request_token=NiIwLSIkTkw6WzBJSCJNUEpIQEg0UDxTJiI%2BTzhTMCAgCg%3D%3D&bck=yes> (as of Aug. 23, 2019).

A.  *Appealability*

The People contend defendant's appeal must be dismissed because the issue raised is outside the scope of his notice of appeal.  We disagree.

"No statute or rule purports to restrict criminal appeals to issues stated in the notice of appeal.  The rules do not suggest the notice of appeal is to operate as a statement of claims, or that it must include all contentions that may be raised in the briefs."  (*People v. Jones* (1995) 10 Cal.4th 1102, 1109 [in case stating noncertificate grounds of appeal, defendant is not required to enumerate all potential issues to be raised on appeal in order to allow the court authority to review them], disapproved of on another ground in *In re Chavez* (2003) 30 Cal.4th 643, 656; *People v. Hoffard* (1995) 10 Cal.4th 1170, 1177-1180 [once a defendant obtains a certificate of probable cause he may raise other cognizable issues not specified in the notice appeal].)  "[A] notice of appeal will be liberally construed to permit a hearing on the merits and avoid a dismissal because of some technical defect or irregularity.  [Citations.]"  (*People v. Robinson* (1954) 43 Cal.2d 143, 145; accord, *People v. Maggart* (1961) 194 Cal.App.2d 84, 87, fn. 1; see *In re Gregory M*. (1977) 68 Cal.App.3d 1085, 1089-1090 [juvenile court would address issues respecting jurisdictional hearing on appeal even though notice of appeal specified it was from an order granting probation].)

We agree that the issue raised on appeal was not specified in defendant's notice of appeal.  However, the original version of section 1001.36 was passed and became immediately effective on June 27, 2018, after defendant filed his appeal.  (Stats. 2018, ch.

10

34 (Assem. Bill No. 1810), § 24, eff. June 27, 2018.) Defendant could not be expected to have the prescience to know that this issue might become cognizable in this appeal. Moreover, defendant obtained a certificate of probable cause; thus, he may raise the issue even if he did not specify it in his notice of appeal.

B. *Finality of Defendant's Judgment*

Defendant contends the matter must be conditionally reversed and remanded to the trial court to determine, retroactively, whether defendant qualifies for a pretrial diversion program for individuals diagnosed with qualifying mental disorders pursuant to recently enacted section 1001.36. Defendant maintains that section 1001.36 may be retroactively applied to defendant's case. The People contend that whether section 1001.36 may be applied retroactivity in this case is irrelevant because it would apply only to nonfinal judgments. The People maintain defendant's judgment became final after he failed to file a timely appeal from the court's imposition of sentence on August 31, 2015. We agree.[9]

"Effective June 27, 2018, the Legislature created a diversion program for defendants with diagnosed and qualifying mental disorders such as schizophrenia, bipolar disorder, and posttraumatic stress disorder. [Citation.] One of the stated purposes of the legislation was to promote '[i]ncreased diversion of individuals with mental disorders . . . while protecting public safety.' [Citation.] 'As used in this chapter, "pretrial diversion" means the postponement of prosecution, either temporarily or permanently, at any point

---

[9] We do not address the People's other contentions as they are unnecessary for resolution of the appeal.

11

in the judicial process from the point at which the accused is charged until adjudication . . . .' [Citation.]" (*Frahs*, *supra*, 27 Cal.App.5th at p. 789, fn. omitted.)

"'On an accusatory pleading alleging the commission of a misdemeanor or felony offense, the court may, after considering the positions of the defense and prosecution, grant pretrial diversion . . . if the defendant meets all of the requirements . . . .' [Citation.] There are six requirements. First, the court must be 'satisfied that the defendant suffers from a mental disorder' listed in the statute. [Citation.] Second, the court must also be 'satisfied that the defendant's mental disorder played a significant role in the commission of the charged offense.' [Citation.] Third, 'a qualified mental health expert' must opine that 'the defendant's symptoms motivating the criminal behavior would respond to mental health treatment.' [Citation.] Fourth, subject to certain exceptions, the defendant must consent to diversion and waive his or her right to a speedy trial. [Citation.] Fifth, the defendant must agree 'to comply with the treatment as a condition of diversion.' [Citation.] And finally, the court must be 'satisfied that the defendant will not pose an unreasonable risk of danger to public safety . . . if treated in the community.' [Citation.]" (*Frahs*, *supra*, 27 Cal.App.5th at p. 789.)

"If a trial court determines that a defendant meets the six requirements, then the court also must also determine whether 'the recommended inpatient or outpatient program of mental health treatment will meet the specialized mental health treatment needs of the defendant.' [Citation.] The court may then grant diversion and refer the defendant to an approved treatment program. [Citation.] Thereafter, the provider 'shall

12

provide regular reports to the court, the defense, and the prosecutor on the defendant's progress in treatment.' [Citation.] 'The period during which criminal proceedings against the defendant may be diverted shall be no longer than two years.' [Citation.]" (*Frahs*, *supra*, 27 Cal.App.5th at p. 789.)

"If the defendant commits additional crimes, or otherwise performs unsatisfactorily in diversion, then the court may reinstate criminal proceedings. [Citation.] However, if the defendant performs 'satisfactorily in diversion, at the end of the period of diversion, the court shall dismiss the defendant's criminal charges that were the subject of the criminal proceedings.' [Citation.]" (*Frahs*, *supra*, 27 Cal.App.5th at p. 790.)

"[T]he Legislature 'must have intended' that the potential 'ameliorating benefits' of mental health diversion to 'apply to every case to which it constitutionally could apply.' [Citation.]" (*Frahs*, *supra*, 27 Cal.App.5th at p. 791.) Thus, because the defendant's case was not then final on appeal and the record affirmatively disclosed that he appeared "to meet at least one of the threshold requirements (a diagnosed mental disorder)", the court remanded the matter the trial court "to make an eligibility determination regarding diversion under section 1001.36." (*Ibid.*)

"The imposition of the sentence is equated with entry of a final judgment. [Citation.] Once a sentence is imposed, the trial court does not have jurisdiction to modify or change the final judgment and is required to order that judgment into execution. [Citations.]" (*People v. Mora* (2013) 214 Cal.App.4th 1477, 1482.) Once the

trial court revokes a defendant's probation and executes the previously imposed but suspended sentence, it lacks jurisdiction to modify the term of that sentence. (*Ibid*.; *People v. Howard* (1997) 16 Cal.4th 1081, 1087.) "[I]f the court has actually imposed sentence, and the defendant has begun a probation term representing acceptance of that sentence, then the court has no authority, on revoking probation, to impose a lesser sentence at the precommitment stage." (*People v. Howard*, *supra*, at p. 1095.)

Where a defendant fails to challenge "the validity of the sentence the court imposed when granting probation[,] [n]o good reason exists for allowing [him] to do so once the court revoke[s] [his] probation." (*People v. Howard*, *supra*, 16 Cal.4th at p. 1095; accord, *People v. Superior Court* (*Rodas*) (2017) 10 Cal.App.5th 1316, 1318, 1325-1326 [to hold otherwise would have the "absurd effect of encouraging defendants to violate the terms of their probation in the hopes of extending the probation term to take advantage of any beneficial changes in the law during the probationary period."]; see *People v. McKenzie* (2018) 25 Cal.App.5th 1207, 1217-1218 ["Had the trial court initially imposed sentence . . . and suspended its execution, we would agree that defendant's judgment would have become final 60 days later and he could not now obtain the retroactive benefit of a change in law under *Estrada*."], review granted Nov. 20, 2018, S251333; *People v. Grzymyski* (2018) 28 Cal.App.5th 799, 805 [where the court imposed split sentences from which the defendant failed to appeal, the defendant was not entitled to retroactive relief pursuant to *Estrada* upon appeal from execution of sentence because the judgments were final when the court initially imposed the sentences], review

14

granted Feb. 13, 2019, S252911; see *People v. Scott* (2014) 58 Cal.4th 1415, 1419 [realignment act not applicable to defendants whose sentences were imposed and suspended prior to its enactment].)

Here, defendant's judgment was final when the time for filing an appeal from the court's order imposing but suspending execution of sentence on August 31, 2015, expired. (Cal. Rules of Court, rule 8.308(a) [appeal must be filed within 60 days of rendition of judgment]; *People v. DeLouize* (2004) 32 Cal.4th 1223, 1232-1233 [the defendant has 60 days from the date of the judgment to file an appeal; failure to file a timely appeal shows acquiescence in the judgment].) Here, the court did not simply stay imposition of judgment; rather, it imposed judgment and suspended execution of that judgment. Therefore, the judgment was final long before the court issued its ruling revoking defendant's probation, its ruling imposing the suspended sentence, and defendant's filing of the notice of appeal. The fact that the defendant's judgment in *Frahs* was not yet final was a dispositive factor in its holding that retroactive relief was appropriate. (*Frahs*, *supra*, 27 Cal.App.5th at p. 790.) Therefore, because defendant acquiesced in the judgment entered on August 31, 2015, by failing to file an appeal, the judgment was final, and defendant is not entitled to any retroactive relief pursuant to section 1001.36.

## III.  DISPOSITION

The judgment is affirmed.

CERTIFIED FOR PUBLICATION

McKINSTER         
Acting P. J.

We concur:

FIELDS            
               J.

RAPHAEL        
               J.