PEÑA, J.
*400 INTRODUCTION
Among other appellate contentions, defendant Tyrece Develle Jefferson argues he is entitled to a remand of his case to permit the trial court to *401 exercise its discretion regarding whether to permit him to seek mental health diversion under newly enacted section 1001.36 of the Penal Code. (Undesignated statutory references are to the Pen. Code.) Because the trial court clearly found, in another context, that defendant's alleged mental health disorder was not a significant factor in his commission of the charged offenses, we conclude a remand for further consideration on this question would be futile. We therefore reject defendant's contention.
Defendant was charged with and convicted of attempted second degree robbery (§§ 664, 211; count 1), assault with a semiautomatic firearm (§ 245, subd. (b); count 2), possession of a firearm by a felon (§ 29800, subd. (a)(1); count 3), and multiple enhancements after he attempted to rob a store at gunpoint. He challenges his conviction for assault with a semiautomatic firearm, arguing the trial court's failure to *172 sua sponte instruct the jury regarding unanimity resulted in a violation of his right to due process.
He also asserts numerous challenges to his sentence. First, he contends remand is required because the trial court mistakenly believed it was required to sentence him consecutively on counts 1 and 2, though it had discretion to run the counts concurrently. To the extent that contention was waived for failure to object, defendant argues he received ineffective assistance of counsel. He next challenges the victim restitution order. He further contends all of his convictions should be conditionally reversed so the trial court can consider granting him mental health diversion pursuant to section 1001.36. Finally, he seeks a new sentencing hearing to permit the trial court to exercise its discretion and decide whether to strike the firearm enhancements in light of Senate Bill No. 620 (2017-2018 Reg. Sess.) (Senate Bill 620) and his two prior serious felony enhancements in light of Senate Bill No. 1393 (2017-2018 Reg. Sess.) (Senate Bill 1393).
We remand this matter for resentencing to permit the trial court to exercise its discretion regarding whether to run the sentences on counts 1 and 2 consecutively or concurrently and to consider whether to dismiss defendant's firearm and/or prior serious felony enhancements in light of Senate Bills 620 and 1393. In all other respects, the judgment is affirmed.
FACTUAL AND PROCEDURAL BACKGROUND
On November 26, 2015, Ms. Ward was working as a cashier at a store in Fresno. Around noon, defendant, who had a mask over his face, entered the store holding a silver gun and approached Ward's register. He pointed the gun at Ward and told her to " '[g]ive [him] the money.' " Ward was scared and called the manager to open the register drawer but then realized she could open it herself. She opened the register and "backed up." Defendant "threw [a] bag" and told her to " '[p]ut the money in the bag.' "
*402 Ward was about to put money in the bag when the customer who was paying, Mr. Rodriguez, turned and handed his five-month-old baby to his wife. Defendant told Rodriguez, " 'No, you're fine' " or " 'you're cool' " and then turned the gun back on Ward. Rodriguez approached defendant, punched him, and tried to grab the gun. They began fighting inside the store and then moved outside. Defendant's pistol "lightly hit" Rodriguez in the face. Rodriguez explained, as they struggled, he was trying to get away from the gun because it was right next to his ribs. Eventually, a shot was fired. After the gunshot, Ward's coworker, Mr. Botello, saw defendant pointing the gun toward the store, trying to pull back the slide or cock it. Rodriguez grabbed the gun and kicked it away. Rodriguez and Botello managed to subdue defendant on the ground until police arrived and apprehended him. Another person delivered the gun to police when they arrived. The gun's magazine was "one round short of being full." It was a "working firearm." The police found a "bullet impact in the carpet" inside of the store.
Neither Ward nor Botello saw defendant's face. Rodriguez saw defendant's face once Rodriguez subdued him after the fight and the mask slipped partway, revealing facial tattoos; Rodriguez identified him as the perpetrator at trial.
The People introduced video surveillance footage from the store. Another employee who was present that day and witnessed the events, Ms. Coffman, narrated what was occurring in the video. The video depicted a masked man entering the store at 12:16 p.m. He waved a gun around and *173 interacted with the cashier. At 12:17 p.m. a man in a white shirt could be seen approaching the gunman and the two engaged in a struggle. Within seconds, the struggle continued outside of the store and Coffman explained the gun went off. Coffman testified: "They hit the white van. They are struggling, struggling, fighting, and [the gunman's] hand went up, the gun went off. Then when the gun went off, it fell to the ground." She did not see the gun pointing toward anyone when it went off.
The People also introduced a recording of the police interview conducted with defendant on November 26, 2015. In the interview, defendant admitted he went into the store "to do a robbery," and he "told the clerk, open the register." He stated he "wasn't trying to hurt nobody"; he was going through a "tough time" and "needed some money."
The jury convicted defendant of attempted second degree robbery (§§ 664, 211; count 1), assault with a semiautomatic firearm (§ 245, subd. (d); count 2), and possession of a firearm by a felon (§ 29800, subd. (a)(1); count 3). Following the guilt phase, the court conducted a proceeding for the jury to consider defendant's plea of not guilty by reason of insanity.
*403 During that hearing, defendant testified he became suicidal and homicidal when he was approximately 15 years old and his mother passed away. He tried to commit suicide while in juvenile hall by using sheets to hang himself from a bunk but the staff intervened and cut him down. According to defendant, he was treated for depression and anxiety at the California Youth Authority when he was 17 and had "panic attacks, bipolar, schizophrenic and emotional states. And other things, such as like ... anger problems and stuff." He testified he was prescribed medication, including Vistaril and lithium. He was released from the California Youth Authority in 2004 but went back to prison as an adult from 2005 to 2015. Defendant testified, while in prison he was diagnosed with "bipolar, schizophrenic [sic ], anxiety, depression, a few other things, such as dealing with anger and having nightmares and stuff, panic attacks." By panic attacks, defendant explained: "I become unconscious or I black out, I get real anxiety [sic ] and I don't properly think, I just react." Defendant testified, while in prison in 2013, he attempted suicide again by cutting his wrist. He also hung himself in his room in 2014 when his grandmother died. He was then sent to a hospital for inmates dealing with mental illness. He was given the same medications but stronger doses. According to defendant, he was released from "R.G." Donovan in San Diego, "a mental health institution," in February 2015.
Defendant testified, on the date of the store incident, he had "issues" causing him stress and he "had a panic attack and ... became unconscious and blacked out" when he was near the store. He recalled having a gun and that he "hit the ... store," meaning he "tried to get some money from the clerk" using the gun when he was attacked. According to defendant he "wasn't really thinking right," he "just became unconscious of what [he] was doing," and "ran in the store and tried to get some money." When he was attacked, he engaged in a fistfight because he "feared for [his] life" and "became suicidal and homicidal at that time." Defendant testified that at the time of trial he was still receiving treatment and medication for the mental health issues he mentioned. Defendant did not have with him any medical records from the institutions he claimed diagnosed him.
Forensic psychiatrist Dr. Howard Terrell testified on behalf of the prosecution that he was asked to prepare a forensic psychiatric evaluation of defendant. He explained *174 he met with defendant, reviewed records he received, and then wrote a report based on all the information available to him and on the legal criteria for insanity in California. Dr. Terrell did not see evidence of bipolar disorder or psychosis, and defendant "did not appear to be mentally ill at the time [Dr. Terrell] met with him." He recommended defendant be found legally sane at the time of the crime because "it appeared that he definitely knew that he was robbing somebody at gunpoint and that he knew that it was wrong. And there was no evidence that [Dr. Terrell] could *404 find of a mental disorder that rendered [defendant] either unable to understand the nature of his criminal actions or to understand the wrongfulness of those actions." Dr. Terrell received information from defendant that he had been diagnosed with bipolar disorder in the past. He testified it was possible defendant had bipolar disorder based on defendant's claim he had been previously diagnosed, but Dr. Terrell was not convinced that he did. Dr. Terrell noted he believed defendant has "had times of depression and anxiety and probably panic." The jury found defendant to have been legally sane at the time he committed the charged crimes.
The court sentenced defendant on count 2, assault with a firearm, a felony violation of section 245, subdivision (b), to the aggravated term of nine years to life, tripled under section 667, subdivision (e)(2)(A)(i), for a total indeterminate term of 27 years to life, enhanced by an additional 10 years for the jury's finding of personal use of a firearm under section 12022.5, subdivision (a), and an additional five years based on the jury's finding defendant suffered a prior serious felony conviction under section 667, subdivision (a)(1). The court noted there were two section 667, subdivision (a) findings, but "the two convictions arose from the same case," so the court imposed "a single 5-year term." The court struck a three-year enhancement for the prison prior under section 667.5, subdivision (a) because it stemmed from the same conviction as the prior serious felony. The court sentenced defendant on count 1, attempted second degree robbery, to 25 years to life, enhanced by 10 years for the jury's finding of personal use of a firearm under section 12022.53, subdivision (b), and an additional five years for defendant's prior serious felony conviction under section 667, subdivision (a)(1), for a total determinate term of 15 years and an indeterminate term of 25 years to life. The court ordered the sentences for counts 1 and 2 to run consecutively under section 667, subdivision (c)(7). Finally, defendant was sentenced to the aggravated term of six years for count 3, possession of a firearm, that was "doubled under Proposition 36." This term was stayed pursuant to section 654. The court ordered defendant "to make restitution to Mr. Rodriguez, Ms. Ward, and to [the store] for any economic loss they may have suffered as a result of [defendant's] conduct pursuant to ... section 1202.4(f)." The court noted it was unaware whether "property [was] taken from [the store]" or "whether there was any damage done to the door which was shown in the video." It also did not know "whether there has been any medical attention sought by Mr. Rodriguez for any injury he may have incurred as a result of [defendant]'s conduct."
*405 DISCUSSION
I.-IV.**
V. Mental Health Diversion
In his second supplemental brief, defendant contends recently enacted section 1001.36, which allows for the pretrial diversion *175 of certain defendants with mental disorders, applies retroactively and his case should be conditionally reversed and remanded to permit the trial court to exercise its discretion regarding whether to permit him to seek mental health diversion. We disagree conditional reversal and remand on this basis are necessary in this case.
A. Relevant Factual Background
Before trial, defendant entered a plea of not guilty by reason of insanity. The court appointed Drs. Howard Terrell and Luis Velosa to conduct a section 1026 examination of the defendant and deliver reports regarding their findings. Drs. Terrell and Velosa opined defendant was sane, and the jury ultimately rejected defendant's insanity defense.
During the sentencing hearing, defendant noted he "need[s] some help as far as being properly treated, rehabilitated, and given a chance to be a better citizen." His counsel argued defendant "does have mental health issues" and "[t]hey are detailed in the documents" defense counsel obtained from the jail and state prison system. He urged the court to consider some sentencing relief, including striking one of defendant's earlier strikes in light of defendant's mental health history. The court responded it did not know a Romero motion was going to be made nor was "privy to any of the documents that [defense counsel] suggest[ed] show that [defendant] has a mental history that the Court should take into consideration."
Defense counsel provided the court with copies of records related to defendant's mental health history while he was previously incarcerated. The prosecutor noted "even a layperson could see that the defendant was suffering while he was in the Department of Corrections from anxiety and depression" but he did not "see any diagnosis while [defendant was] in custody ... for bipolar or any other much more severe psychiatric disorder or medication that would suggest that he had been diagnosed with those .... [I]t appears he self-reported bipolar disorder once he was in the jail."
*406 The court denied defendant's Romero motion explaining:
"[W]hatever mental or physical condition the defendant may have been suffering from had no bearing whatsoever on his conduct, and therefore, had no ability to reduce his culpability for the crimes he was convicted of in this case.
"It is very clear, based upon the video recorded interview of the defendant within two hours after the conduct that he was not operating under any type of allusion [sic ], he clearly knew exactly what he was doing, he clearly stated during the videotaped event itself that it was clear he was making demands of the clerk, he was trying to prevent [Mr.] Rodriguez from getting involved because he knew exactly what he was doing. He knew it was wrong. He was not operating under anything that would suggest that he did not know what he was doing or that he was under any distress of any type other than he was trying to get some money.
"It is difficult because [defendant], by all appearances, as he is sitting here today, and frankly as he sat during the trial is an individual who can comply with the law, can conduct himself appropriately and is very articulate, speaks very well. But he seems to think it's okay to attempt to use robbery as a means of attaining money. The [store] is not an ATM. And unfortunately that is the way [defendant] viewed it. Even to the point of using a real gun, a loaded firearm, not what he testified to as being *176 a BB gun or a replica. So that is very troubling to the Court."
B. Standard of Review and Applicable Law
Effective June 27, 2018, the Legislature created a diversion program for defendants with diagnosed and qualifying mental disorders such as schizophrenia, bipolar disorder, and posttraumatic stress disorder. ( § 1001.36, subd. (b)(1).) One of the stated purposes of the legislation was to promote "[i]ncreased diversion of individuals with mental disorders ... while protecting public safety." (§ 1001.35, subd. (a).)
" '[P]retrial diversion' means the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment." ( § 1001.36, subd. (c).)
"On an accusatory pleading alleging the commission of a misdemeanor or felony offense, the court may, after considering the positions of the defense and prosecution, grant pretrial diversion ... if the defendant meets all of the requirements ...." ( § 1001.36, subd. (a).) There are six requirements. (Id. , *407 subd. (b)(1).) First, the court must be "satisfied that the defendant suffers from a mental disorder as identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders." ( § 1001.36, subd. (b)(1)(A).) "Evidence of the defendant's mental disorder shall be provided by the defense and shall include a recent diagnosis by a qualified mental health expert." (Ibid. ) Second, the court must also be "satisfied that the defendant's mental disorder was a significant factor in the commission of the charged offense." ( § 1001.36, subd. (b)(1)(B).) "A court may conclude that the defendant's mental disorder was a significant factor in the commission of the charged offense if, after reviewing any relevant and credible evidence, ... the court concludes that the defendant's mental disorder substantially contributed to the defendant's involvement in the commission of the offense." (Ibid. , italics added.) Third, "a qualified mental health expert" must opine that "the defendant's symptoms of the mental disorder motivating the criminal behavior would respond to mental health treatment." ( § 1001.36, subd. (b)(1)(C).) Fourth, subject to certain exceptions, the defendant must consent to diversion and waive his or her right to a speedy trial. ( § 1001.36, subd. (b)(1)(D).) Fifth, the defendant must agree "to comply with treatment as a condition of diversion." ( § 1001.36, subd. (b)(1)(E).) And finally, the court must be "satisfied that the defendant will not pose an unreasonable risk of danger to public safety ... if treated in the community." ( § 1001.36, subd. (b)(1)(F).)
If a trial court determines that a defendant meets the six requirements, then the court must also determine whether "the recommended inpatient or outpatient program of mental health treatment will meet the specialized mental health treatment needs of the defendant." ( § 1001.36, subd. (c)(1)(A).) The court may then grant diversion and refer the defendant to an approved treatment program. (Id. , subd. (c)(1)(B).) "The period during which criminal proceedings against the defendant may be diverted shall be no longer than two years." (Id. , subd. (c)(3).) If the defendant commits additional crimes, or otherwise performs unsatisfactorily in diversion, then the court may reinstate criminal proceedings. ( § 1001.36, subd. (d).) However, if the defendant performs "satisfactorily in diversion, at the end of the period of diversion, the court shall dismiss the defendant's criminal charges that were the subject *177 of the criminal proceedings ...." (Id. , subd. (e).)
C. Analysis
Defendant and the People debate the retroactivity of section 1001.36. However, even if we were to assume, without deciding, the statute is retroactive, the record before us "clearly indicates" the trial court would not have found defendant eligible for diversion. Thus, we agree with the People that defendant is not entitled to remand for a mental health diversion eligibility hearing.
*408 To be eligible for consideration for pretrial diversion, the trial court must be "satisfied that the defendant's mental disorder was a significant factor in the commission of the charged offense," meaning that it "substantially contributed" to defendant's commission of the offense. ( § 1001.36, subd. (b)(1)(B).) Here, the trial court had before it evidence of defendant's mental health history including defendant's medical records, his testimony regarding his mental health history, the prosecution's expert testimony regarding defendant's mental state, video evidence of the attempted store robbery, and the police interview with defendant shortly after the crimes took place. After considering such evidence, the court expressly stated on the record: "[W]hatever mental or physical condition the defendant may have been suffering from had no bearing whatsoever on his conduct , and therefore, had no ability to reduce his culpability for the crimes he was convicted of in this case." (Italics added.) Referring to defendant's video interview introduced at trial, the court concluded defendant "clearly knew exactly what he was doing, he clearly stated during the videotaped event itself that it was clear he was making demands of the clerk, he was trying to prevent [Mr.] Rodriguez from getting involved because he knew exactly what he was doing. He knew it was wrong. He was not operating under anything that would suggest that he did not know what he was doing or that he was under any distress of any type other than he was trying to get some money."
On this record, the trial court clearly indicated defendant's alleged mental health disorder was not a significant factor in his commission of the charged offenses, making him ineligible for diversion. Thus, remanding the matter to the trial court would be an idle act. (See People v. Coelho (2001) 89 Cal.App.4th 861, 889, 107 Cal.Rptr.2d 729 ["reviewing courts have consistently declined to remand cases where doing so would be an idle act that exalts form over substance because it is not reasonably probable the court would impose a different sentence"]; see also People v. Gutierrez , supra , 58 Cal.4th at p. 1391, 171 Cal.Rptr.3d 421, 324 P.3d 245 [where court is unaware of discretionary sentencing choices, remand for resentencing is required unless record " 'clearly indicate[s]' " trial court would have reached same conclusion " 'even if it had been aware that it had such discretion' "].)
Defendant relies upon the recently published case of People v. Weaver (2019) 36 Cal.App.5th 1103, 249 Cal.Rptr.3d 223 in support of his argument a conditional remand is required for the trial court to hold a hearing to determine whether to grant diversion under section 1001.36. In Weaver , the Sixth Appellate District disagreed with our court's conclusion in People v. Craine (2019) 35 Cal.App.5th 744, 247 Cal.Rptr.3d 564 that section 1001.36 *409 does not apply retroactively. ( People v. Weaver , supra , at pp. 1120-1121, 249 Cal.Rptr.3d 223.) Instead, the Weaver court held nothing in the text of section 1001.36 is sufficient to overcome the presumption of In re Estrada (1965) 63 Cal.2d 740, 48 Cal.Rptr. 172, 408 P.2d 948 that the statute applies *178 to individuals whose convictions are not yet final on appeal. ( Weaver , at p. 1121, 249 Cal.Rptr.3d 223.) Relying upon People v. Frahs (2019) 27 Cal.App.5th 784, 791, 238 Cal.Rptr.3d 483, review granted December 27, 2018, S252220, the Weaver court held remand is appropriate when " 'the record affirmatively discloses that [the defendant] appears to meet at least one of the threshold requirements' " of section 1001.36. ( Weaver , supra , at p. 1121, 249 Cal.Rptr.3d 223.) It concluded "[t]he record here affirmatively discloses that Weaver appears to meet at least one of the threshold requirements, namely, he suffers from a diagnosed mental health disorder." ( Ibid. ) Thus, it conditionally reversed Weaver's conviction for the trial court to hold a hearing to determine whether to grant him diversion under section 1001.36. ( Weaver , supra , at pp. 1121-1122, 249 Cal.Rptr.3d 223.)
We find it unnecessary to reconsider or reaffirm the conclusion reached in People v. Craine. Notably, the opinions in Weaver and Frahs do not discuss whether the records in those cases disclosed a remand would be futile. But, as discussed, remand is not appropriate when it would be an idle act. And, here, the trial court's comments clearly indicate it would not find defendant eligible for mental health diversion. Thus, based on the specific facts and record of this case, remand is not required. (See, e.g., People v. Cawkwell (2019) 34 Cal.App.5th 1048, 1053-1054, 246 Cal.Rptr.3d 744 [remand not appropriate because record established defendant was not eligible for diversion under § 1001.36 based on nature of convictions requiring him to register under § 290].) Accordingly, we decline defendant's request to conditionally reverse the judgment and remand for a mental health diversion eligibility hearing.
VI. Remand for Consideration of Senate Bill 1393***
DISPOSITION
The matter is remanded to the trial court for a new sentencing hearing to permit the trial court to exercise its discretion regarding whether to sentence defendant concurrently or consecutively on counts 1 and 2 and whether to *410 strike the firearm and/or prior serious felony enhancements in light of Senate Bills 620 and 1393. In all other respects, the judgment is affirmed.
WE CONCUR:
POOCHIGIAN, Acting P.J.
DESANTOS, J.

See footnote *, ante .

See footnote *, ante .