Filed 10/5/20  P. v. Merritt CA6
Opinion following transfer from Supreme Court
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RAYMOND D. MERRITT,<br><br>    Defendant and Appellant. | H046069<br>(Santa Clara County<br>Super. Ct. No. C1639645) |

Defendant Raymond D. Merritt was convicted by jury trial of second degree robbery (Pen. Code, §§ 211, 212.5, subd. (c))[1] in March 2018, and the court found true strike and serious felony allegations.  He was sentenced on July 12, 2018 to nine years in state prison, which included a five-year serious felony enhancement under section 667, subdivision (a).

On appeal, defendant contends that a remand is required for the court to determine (1) whether he is eligible for mental health diversion under section 1001.36, which took effect in June 2018, after the jury's verdict but before his sentencing hearing, and (2) whether to strike the five-year serious felony enhancement under Senate Bill No. 1393, which took effect in January 2019, after his sentencing hearing.  We conclude that a remand is required as to the serious felony enhancement but not as to his eligibility for mental health diversion.

---

[1] All further statutory references are to the Penal Code.

## I.  FACTS

In June 2016, Mina Shehata was working as an assistant manager at a CVS store in Santa Clara.  On the morning of June 9, Shehata saw defendant with a bag next to a locked display case containing tooth whiteners.  The display case appeared to have been pried open, and a row of merchandise was missing.  Shehata asked defendant:  " 'Can I check your bag?' "  Defendant said " 'No' " and started to walk toward the store's exit.

Shehata, who was wearing a CVS shirt and name badge, stepped in front of defendant and told him:  " 'I need you to stop and check your bag.' "  Again, defendant refused.  Defendant put his hands in front of him with clenched fists "in a boxer's stance" and said:  " 'I am going to punch you if you don't move.' "  Defendant "moved his arm like he was going to punch me in the face."  Shehata was "scared" and "had a feeling that he would start punching me on the face."  Shehata stepped aside, and defendant walked "straight to the front door."  Shehata followed him and saw him get into a parked car.  Shehata took a couple of photographs of the car and called his manager and the "loss prevention person," who told him to call the police.

The police arrived five minutes later.  Shehata gave the police the photographs he had taken of the car, which showed the car's license plate number.  At about noon that day, the car was stopped by a sheriff's deputy for a seat belt violation.  Defendant was driving the car.  A bag in the front passenger seat of the car contained several boxes of teeth whitening strips.  Defendant "spontaneously" told a police officer at the scene of the car stop that he "did do a theft" at "a CVS store."  "He said that he expected to get a citation for the theft."  Defendant's fingerprint was found on the CVS display case.

## II.  PROCEDURAL BACKGROUND

In August 2016, defendant was charged by information with robbery, and it was further alleged that he had suffered a prior conviction that qualified as both a strike (§§ 667, subds. (b)-(i), 1170.12) and a serious felony and that he had suffered two prison priors (§ 667.5, subd. (b)).

2

The robbery count was tried to a jury. The jury was sworn on February 27, 2018, and it returned a guilty verdict on March 2. Defendant waived his right to a jury trial on the strike, prior serious felony, and prison prior allegations. The prosecution dismissed the prison prior allegations, and the court found the remaining allegations true on March 2. The sentencing hearing was originally calendared for June 2018.

Defendant filed a request that the court strike the strike finding. His request described how he had become addicted to methamphetamine a decade earlier, at age 19. He conceded that he "ha[d] not taken advantage of the services that could have been provided to him while on probation in the past." However, he claimed that he was now motivated by the lengthy prison term he was facing to deal with his addiction, and he had been accepted into a residential drug treatment program.

The probation report noted that defendant had seven misdemeanor cases pending, including six counts of theft (§ 484), possession of burglary tools (§ 466), possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)), leaving the scene of an accident (Veh. Code, § 20002, subd. (a)), and driving without a license (*Id*., § 12500, subd. (a)). Defendant declined to speak with the probation officer about the current offense. He told the probation officer that he had been smoking marijuana since age 15 and began using methamphetamine at age 20. He had been spending $100 to $200 a day for methamphetamine, and he "would steal, trade, or do anything to support his addiction." His strike prior was a robbery of a 12-year-old boy in a school parking lot; defendant, at age 18, had been granted probation with a year in jail for that robbery conviction. Although he was released from custody in that case in 2008, his criminal activity continued unabated from then until the current offense. He sustained another felony conviction and 18 misdemeanor convictions, including battery on a cohabitant, sexual battery, reckless driving, and leaving the scene of an accident, during the following eight years. His performance on probation was "poor." Defendant served a

3

32-month prison term in 2009 for a felony vehicle theft conviction. He told the probation officer that he was "crying for help as he needs to address his drug addiction."

At defense counsel's request, the sentencing hearing was continued to July 12, 2018. At the commencement of the July 12 hearing, the court disposed of five of defendant's pending misdemeanor cases. Defendant waived his rights and pleaded no contest to six counts of petty theft, possession of burglary tools, reckless driving, and leaving the scene of an accident. The drug possession case was dismissed, and defendant's sentences for the misdemeanor convictions were deemed served.

The court then proceeded to the robbery case. Defendant's trial counsel asked the court to consider defendant's "mental health condition at the moment. [¶] He's currently receiving anti-psychotic medication in custody. He's been reporting auditorial hallucinations, anxiety. And apparently this has been going on for a couple of years but has gotten steadily worse over the last few years, after the death of his mother, and second, the outcome of this case. [¶] I have received medical records from the jail confirming the medication and the symptoms that he has been experiencing. [¶] The reason I wanted to add that to the record, Your Honor, is that I believe that this is another factor that would be useful for the Court to consider when considering whether to follow the request I had made for grounds of probation." "[Defendant] was hoping that the Court would consider an alternative that would allow him to treat that issue [(his mental health situation)] along with his drug addiction issues. [¶] He is concerned about how this could develop. He really wants to knock it on the head and start dealing with this now. And that's one of the reasons, Your Honor, I had requested that he be given the opportunity to take part in treatment."

The probation officer told the court that during defendant's prior grants of probation he had "no success with probation and probation services" and "continually failed to meet with probation." He would not even fill out the required paperwork, and

4

"he never completed any of his probation orders, and was, in turn, committing new offenses."

The court observed that "it is encouraging that you are seeking treatment in the jail. It sounds like there are a number of issues that would be helpful for you to get treatment." However, "based on the unbroken record of criminal conduct and variety of kinds," the court refused to strike the strike in order to make a grant of probation possible. The court also rejected defendant's claim that imposing a nine-year prison term would be "cruel and unusual punishment." The court sentenced defendant to the four-year (doubled) lower term for the robbery count and a consecutive five-year term for the prior serious felony enhancement. Defendant timely filed a notice of appeal.

## III. DISCUSSION

### A. *Mental Health Diversion*

This court's original opinion in this case, which we have vacated, rejected defendant's claim that a remand was required for the trial court to consider whether he was eligible for mental health diversion. The original opinion held that a remand would be an idle act because the record clearly indicated that the court would have rejected diversion. The California Supreme Court granted review and has now transferred this case back to this court for reconsideration in light of its intervening decision in *People v. Frahs* (2020) 9 Cal.5th 618 (*Frahs*). In *Frahs*, the court held that section 1001.36 applies retroactively to all cases that were not final when that section was enacted. (*Frahs*, *supra*, at pp. 630-637.)

The California Supreme Court's decision in *Frahs* has no impact on this court's original conclusion that the record in this case clearly indicates that the trial court would not have granted defendant diversion if it had understood that it had the discretion to do so. We did not address the retroactivity issue in our original opinion because we found that a remand would be futile. A remand is not necessary if "the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had

5

been aware that it had such discretion.'" (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391 (*Gutierrez*).)  This is true because "remand is not appropriate when it would be an idle act." (*People v. Jefferson* (2019) 38 Cal.App.5th 399, 409 (*Jefferson*).)

Defendant contends that the California Supreme Court's decision in *Frahs* "explicitly rejected a futility argument" like the one this court originally accepted. We disagree.  In *Frahs*, the Attorney General argued that remand would be "pointless" because (1) the trial court had already found that "there were no 'significant mitigating factors,' " and (2) the defendant was ineligible for probation.  (*Frahs*, *supra*, 9 Cal.5th at pp. 638-639.)  The California Supreme Court rejected both of these arguments.  It reasoned that the trial court's finding regarding mitigation did not preclude a finding that the defendant's mental disorder played a significant role in the offense, and that the defendant's statutory ineligibility for probation did not rest on any finding by the trial court that the defendant posed an unreasonable risk of danger to public safety if granted diversion.  (*Id.* at p. 639.)  The California Supreme Court expressly declined in *Frahs* to "address the question" of whether a remand would be inappropriate "when the record clearly indicates the trial court would have found the defendant" ineligible for diversion because he posed an unreasonable risk of danger to public safety.  (*Id.* at p. 640.)

Defendant emphasizes that an "inference" from the record is not an adequate basis for failing to order a remand.  He argues that the record must "conclusively establish" that the trial court would not have granted diversion.  While we agree that an inference is not sufficient to preclude a remand, we do not rely on inferences, and the California Supreme Court did not address this issue in *Frahs*.  The trial court's statements on the record in this case, unlike the no-mitigation finding and the statutory probation ineligibility in *Frahs*, clearly indicated that the court would have rejected diversion even if it found defendant eligible.

The sole issue at defendant's sentencing hearing was whether the court was willing to strike defendant's strike to permit a grant of probation so that defendant could

6

enter a residential treatment program and obtain treatment for his mental health conditions. Indeed, defendant argues on appeal that his trial counsel "sufficiently raised the issue that Merritt should be placed in a treatment program instead of prison for treatment of his mental health issues in both his pleading papers and in argument at sentencing . . . ."

Not only was this issue "sufficiently raised" at the sentencing hearing, but the trial court also resolved it. Although the trial court acknowledged that it would be "helpful" for defendant to "get treatment," it expressly rejected facilitating such treatment due to defendant's "unbroken record of criminal conduct and variety of kinds." The trial court's ruling clearly indicates that it would not have been willing to grant diversion for the very same reason. Therefore, the record in this case " 'clearly indicate[s]' " (*Gutierrez*, *supra*, 58 Cal.4th at p. 1391) that remand "would be an idle act" (*Jefferson*, *supra*, 38 Cal.App.5th at p. 409) because the trial court would not have granted diversion if it had believed it had that option.

The trial court's express rationale for rejecting defendant's argument for mental health treatment instead of prison was indisputably supported by the record. Since reaching adulthood, defendant had committed crime after crime after crime. Neither his numerous grants of probation nor his prior prison term had encouraged him to take advantage of the services offered by the probation department to him on multiple occasions throughout the last decade. His performance on probation was uniformly poor. The trial court's sentencing decision clearly established that it was unwilling to risk the safety of the community in order to facilitate treatment for a person who had consistently rejected every service he had ever been offered in the past and had continued to commit dangerous offenses without pause. Under these circumstances, a remand for the court to consider diversion for mental health treatment would be futile because it is inconceivable that the court would grant what it has already expressly considered and rejected.

Defendant argues that a remand is necessary because the trial court did not make any finding that defendant would "pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community." (§ 1001.36, subd. (b)(1)(F).) He misconstrues the statute. While such a finding would render a defendant *ineligible to be considered* for diversion, the lack of such a finding does not *mandate* diversion. "[T]he court *may* . . . grant pretrial diversion to a defendant pursuant to this section *if* the defendant meets all of the requirements specified in paragraph (1) of subdivision (b)." (§ 1001.36, subd. (a), emphasis added.) "Pretrial diversion *may* be granted pursuant to this section *if* all of the following criteria are met." (§ 1001.36, subd. (b)(1), emphasis added.) One of those criteria is that the defendant will not "pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community." (§ 1001.36, subd. (b)(1)(F).) A trial court *may* grant a defendant diversion if he meets all of the criteria, including that he will not pose such a danger, but even if he meets all of the criteria the court may reject diversion. Here, the record clearly indicates that the trial court *would have rejected* diversion even if it had found that defendant met all of the criteria. Hence, a remand is not merited because it would be an idle act.

### B. Serious Felony Enhancement

Defendant contends, and the Attorney General concedes, that a remand is required for the trial court to have the opportunity to exercise its discretion to strike the serious felony enhancement under a statutory amendment that took effect after defendant was sentenced but was retroactive to all non-final cases. They are correct. (*People v. Garcia* (2018) 28 Cal.App.5th 961, 971.) Consequently, we will order a remand for that purpose.

## IV.    DISPOSITION

The judgment is reversed, and the matter is remand for the limited purpose of permitting the trial court to exercise its discretion as to whether to strike the serious felony enhancement.  If the court strikes the enhancement, it shall resentence defendant. If it declines to strike the enhancement, it shall reinstate the judgment.

_____

ELIA, J.

WE CONCUR:

_____

PREMO, Acting P.J.

_____

BAMATTRE-MANOUKIAN, J.

*People v. Merritt*
H046069