Filed 3/18/26  P. v. Hunt-Cooks CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DAVID LAMAR HUNT-COOKS,<br><br>    Defendant and Appellant. | 2d Crim. No. B337100<br>(Super. Ct. No. GA113776)<br>(Los Angeles County) |

David Lamar Hunt-Cooks appeals his conviction of second degree murder (Pen. Code, §§ 187, subd. (a), 189)[1] following a jury trial.  He contends (1) the trial court erred in denying his motion for mistrial, (2) remand for resentencing is necessary because the trial court failed to appreciate its discretion to impose a lesser firearm enhancement, and (3) the trial court violated his right to due process by imposing fines and fees without a determination that he is presently able to pay.

---

[1]  All further statutory references are to the Penal Code unless otherwise indicated.

While this appeal was pending, our Supreme Court decided *People v. Kopp* (2025) 19 Cal.5th 1 (*Kopp*), which held that a defendant may challenge the imposition of a punitive fine under the excessive fines provisions of the United States and California Constitutions. (*Id.*, at pp. 23, 30.) *Kopp* also held that equal protection principles require a court, upon request, to consider a defendant's ability to pay before imposing court operations and facilities assessments fees as ancillary costs. (*Kopp*, at pp. 30-31.)

We sent a letter request inviting the parties to address *Kopp, supra*, 19 Cal.5th 1, and what, if any, affect it has in this appeal. At oral argument, the parties agreed appellant is entitled to the benefit of *Kopp's* analysis regarding the fines and fees imposed in this case. Section 1260 gives the Court of Appeal broad power to modify the judgment and any aspect of the sentence. We do so now and strike the $370 in fines and fees. We otherwise affirm the judgment.

*Factual and Procedural Background*

In the early morning hours of October 30, 2022, appellant shot and killed Martrell Robinson. Appellant was apparently angry that Robinson had "swapped out" the chain on appellant's necklace while he was away in prison. At trial, appellant's codefendant, Brittney Ruth, testified that she and appellant were driving around in a Lexus SUV that she had rented earlier that day. Their plan was to purchase some marijuana. As they were driving, appellant "spotted" Robinson. Appellant told Ruth to stop the car, got out, walked up to Robinson, and shot him in the face. Appellant then got back into the car and told Ruth, "'I'm sorry. Drive. Just go home.'" When they arrived home, appellant told Ruth, "'I think I killed him.'" Ruth returned the

rental car a day early after the shooting.

Police responded to the scene and found Robinson lying in the street with a fatal gunshot wound to the side of his head. Officers canvased the area and discovered a single .40 caliber shell casing located about 10 to 15 feet from Robinson's body. They also recovered video surveillance taken from a house near the scene, which depicted the shooting. After conducting an investigation, police identified appellant and Ruth as possible suspects in the murder. Forensic analysis of the shell casing revealed Ruth's DNA.

Police arrested appellant and Ruth, placed them in separate holding facilities, and conducted a "*Perkins* operation."[2] As part of the operation, appellant told an undercover police informant that he shot Robinson while they were both standing on the street. Appellant also said that Ruth was driving the car the night of the shooting. Ruth admitted that she was driving the car and had seen Robinson fall to the ground, but denied any involvement in the murder.

In September 2023, the prosecution filed an amended information, charging appellant and Ruth with murder. (§ 187, subd. (a).) The information also alleged that appellant personally used a firearm in the commission of the murder (§§ 12022.5, subd. (a), 12022.53, subds. (a)-(d)), and that he had suffered a prior conviction for a serious or violent felony (§§ 667, subds. (b)-(j), 1170.12).

In November 2023, a joint jury trial began against appellant and Ruth. Following the close of evidence, the trial court granted the prosecution's motion to amend the information to dismiss the murder charge against Ruth, and instead, charge

---

[2] *Illinois v. Perkins* (1990) 496 U.S. 292 (*Perkins*).

her as an accessory. (§ 32, count 2). Appellant moved for a mistrial, which the trial court denied.

The jury acquitted Ruth, but found appellant guilty of second degree murder. The jury also found true all four firearm enhancement allegations. (§§ 12022.53, subds. (b)-(d), 12022.5, subd. (a).) Appellant admitted the prior conviction allegation was true. The trial court sentenced him to state prison for a total aggregate term of 55 years to life, as follows: 15 years to life for the murder conviction, doubled pursuant to the "Three Strikes" law, plus 25 years to life for his firearm use. (§ 12022.53, subd. (d).) The trial court stayed punishment on the three lesser firearm enhancements. It also ordered appellant to pay $17,696.03 in victim restitution and $370 in fines and fees.

*Discussion*

Appellant contends the trial court erred by denying his request for a mistrial when the prosecution dismissed the murder charge against Ruth following the close of evidence. We disagree.

During opening statements, the prosecution told the jury that both appellant and Ruth were charged with murder. Ruth testified in her own defense and implicated appellant in the shooting. Following the close of evidence, the prosecution moved to dismiss the murder charge against Ruth and add an accessory charge. The prosecutor stated that he did not know in advance what Ruth's testimony would be. After hearing Ruth's testimony and considering how it "lined up" with the evidence presented, as well as evidence contained in discovery that was not presented, the prosecutor had "concerns about the validity" of the murder charge against her.

The trial court granted the prosecution's request to amend the information but denied appellant's request for a mistrial,

4

stating: "There's no prejudice to [appellant]. This change does not affect the evidence against [appellant]."

The trial court instructed the jurors that the charge of murder against Ruth no longer needed to be decided, and that it should not speculate or consider in any way why that was the case. The trial court also instructed the jury that it was required to separately consider the evidence as it applied to each defendant, and that it must decide each charge for each defendant separately.

A motion for mistrial is directed to the trial court's sound discretion. (*People v. Jenkins* (2000) 22 Cal.4th 900, 985-986.) "'In reviewing rulings on motions for mistrial, we apply the deferential abuse of discretion standard. [Citation.] "A mistrial should be granted if the court is apprised of prejudice that it judges incurable by admonition or instruction. [Citation.] Whether a particular incident is incurably prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions. [Citation.]"'" (*People v. Penunuri* (2018) 5 Cal.5th 126, 149; *People v. Collins* (2010) 49 Cal.4th 175, 198.)

Appellant contends the trial court should have declared a mistrial when the prosecution withdrew the murder charge against Ruth because "there was no way" the jury could have decided the murder charge against appellant in a fair manner that comports with due process. He asserts that if appellant had not been tried together with Ruth for the murder, the evidence would likely have been very different. Appellant claims the sequence of events created a "manifestly unfair '2 against 1' situation where the prosecution and Ruth were able to team up

and "pin" the murder on appellant, and gave the jury essentially no choice but to hold appellant accountable for the murder."

To be sure, Ruth's testimony was damaging to appellant. She provided the timeline of events leading up to the fatal shooting and implicated him in the murder. But mutually antagonistic defenses are common in joint trials and are not prejudicial per se. (See *People v. Thompson* (2016) 1 Cal.5th 1043, 1081; *People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 819.) Even without Ruth's testimony, the evidence against appellant was overwhelming such that there was no prejudice.

First, appellant confessed to the murder. During the *Perkins* operation, he told the undercover agent that he shot Robinson while they were both standing outside on the street. As the United States Supreme Court has stated, "A confession is like no other evidence. Indeed, 'the defendant's own confession is probably the most probative and damaging evidence that can be admitted against him . . . . The admissions of a defendant come from the actor himself, the most knowledgeable and unimpeachable source of information about his past conduct. . . .'" (*Arizona v. Fulminante* (1991) 499 U.S. 279, 296.) Second, the shooting was depicted on videotape, which was played for the jury. Third, the evidence showed that appellant had motive. He was angry about the necklace.

Moreover, the trial court specifically instructed the jury that it should not consider the change in the charge as to Ruth and was required to decide each charge for each defendant separately. We presume the jurors followed the instructions. (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.)

Accordingly, the trial court did not abuse its discretion in denying appellant's motion for mistrial.

6

*Lesser Firearm Enhancement*

Appellant contends remand for resentencing is required because the trial court failed to appreciate its discretion to impose a lesser firearm enhancement. The People disagree and contend, based on this record, remand for resentencing would be an idle act. We agree.

Prior to sentencing, appellant filed a combined sentencing brief and motion requesting that the trial court dismiss his prior strike pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 and dismiss all of the firearm enhancements in the interest of justice pursuant to section 1385.

The trial court advised the parties of its tentative sentence, noting that the jury found true the various firearm enhancement allegations, including the personal and intentional discharge of a firearm causing bodily injury or death. (§§ 12022.53, subds. (b)-(d), 12022.5, subd. (a).) The trial court observed that section 12022.53, subdivision (f) stated that only one additional term of imprisonment under this section shall be imposed for each crime, and that if more than one enhancement is found true, the court shall impose the enhancement that provides the longest term of imprisonment. The trial court then stated, "So[,] in this case, the court would impose the 25 years to life and stay the punishment on the other firearms allegations." When the trial court asked if the parties agreed with the statement of potential sentence, both the prosecutor and trial counsel responded affirmatively.

Thereafter, trial counsel argued the *Romero* motion and requested the trial court strike the firearm enhancements. Alternatively, counsel asked the trial court to impose the 10-year firearm enhancement pursuant to section 12022.5. Counsel asserted that in several other murder cases he had handled, the

district attorney's office had not sought the 25-year-enhancement and that it was unfairly being sought in this case in violation of the Racial Justice Act.

The prosecutor responded that the decision to seek the enhancement pursuant to section 12022.53 was made by the filing deputy, the statute was valid law, and was still imposed under the current administration in selective cases. The prosecutor emphasized that appellant was 27 years old when he committed this crime, had been released on parole just 36 days prior to the shooting following a 12-year prison sentence for his prior strike conviction, and when he was arrested for this offense, he was caught with another firearm. The prosecutor argued that appellant was a danger to society and asked the trial court to impose the indicated sentence of 30 years to life on count 1 plus 25 years to life on the section 12022.53, subdivision (d) allegation.

After hearing argument, the trial court denied the *Romero* motion, finding that appellant "represents a danger" and "[h]is case falls squarely within the type of case to which the Three-Strikes law is intended to apply." The trial court also expressly considered the fact that appellant had just recently been released from prison, was on parole at the time he committed the murder, and the circumstances of the crime "showed a high degree of callousness," noting that appellant shot Robinson "at close range."

As to the firearm allegations, the trial court found no prima facie case was made as to the Racial Justice Act and denied the request to impose a lesser firearm enhancement. The trial court observed that the prosecutor said it was still alleged in various cases, and "[c]ertainly the circumstances in this case would and do merit alleging it." The trial court then imposed 25 years to life

8

for the firearm enhancement (§ 12022.53, subd. (d)), consecutive to the 30 years to life for count 1 (15 years doubled pursuant to the Three Strikes law), and stayed the three lesser firearm enhancements (§§ 12022.53, subd. (b), (c), 12022.5, subd. (a)).

Appellant contends the trial court's statements at sentencing reflect an overall belief that the imposition of the 25-years-to-life firearm enhancement was mandatory and a lack of understanding of its discretion under section 12022.53, subdivision (h) and section 1385 to impose a lesser enhancement.

Senate Bill No. 620 (2017-2018 Reg. Sess.), effective January 1, 2018, amended section 12022.53 to give trial courts discretion, in limited circumstances, pursuant to section 1385, to strike a firearm enhancement in the interest of justice. (See *People v. Johnson* (2019) 32 Cal.App.5th 938, 941.) Subdivision (h) of section 12022.53 provides in relevant part, "The court may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section."

"[A] defendant is entitled to decisions made by a [trial] court exercising informed discretion. [Citation.] A court acting while unaware of the scope of its discretion is understood to have abused it. [Citation.]" (*People v. Tirado* (2022) 12 Cal.5th 688, 694; *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.) We review a trial court's sentencing decision for an abuse of discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847, superseded by statute as stated in *People v. Lynch* (2024) 16 Cal.5th 730, 757.)

Here, the trial court's comments, when viewed in context with its overall sentencing decision, clearly indicate that it believed this case warranted the most severe additional punishment available under the law. Notably, the trial court

9

denied appellant's *Romero* motion because he "represents a danger" to society and fell squarely within the Three Strikes law. The trial court also refused to dismiss any of the firearm enhancement allegations in the interest of justice pursuant to section 1385. The probation report, which was part of the record, listed eight factors in aggravation and none in mitigation. Additionally, when appellant had the opportunity to express remorse for his actions, he blamed the victim's family, stating, "I feel like you should have raised him better. If little brother wasn't never a thief, a lot of stuff would be different."

It is well established that the judgment challenged on appeal is presumed correct, and it is the appellant's burden to affirmatively demonstrate error. (*People v. Sullivan* (2007) 151 Cal.App.4th 524, 549.) He cannot do so. Indeed, his assertion that there is a "reasonable possibility" that the trial court would have been willing to "shave as little as 5 years off" his sentence is not supported by the record. On these facts, there was no prejudice.

Accordingly, we decline appellant's request to reverse and remand so the trial court may consider a lesser firearm enhancement. To do so would be an idle act. (See *People v. Jefferson* (2019) 38 Cal.App.5th 399, 409; *People v. Bravot* (1986) 183 Cal.App.3d 93, 98.)

*Fines and Fees*

Appellant contends this court should vacate the assessments and stay his restitution fines because the trial court violated due process by imposing them without a determination of his present ability to pay.

Here, the trial court imposed victim restitution totaling $17,696.03, plus the following fines and fees: $300

10

restitution/suspended revocation fine (§§ 1202.4, 1202.45); $40 court operations assessment fee (§ 1465.8); and $30 court facilities assessment fee (Gov. Code, § 70373). The court imposed the fines and fees without conducting an ability to pay hearing over trial counsel's objection.

In *Kopp*, *supra*, 19 Cal.5th 1, our Supreme Court clarified that, "[a]lthough fines may properly be imposed as punishment for crime," the "excessive fines" analysis under the state and federal constitutions is the "proper vehicle to challenge punitive fines." (*Id.*, at pp. 23, 30, disapproving *People v. Dueñas* (2019) 30 Cal.App.5th 1157.) *Kopp* also held that "equal protection principles require a court, upon request, to consider a defendant's ability to pay before imposing a court operations assessment under Penal Code section 1465.8, subdivision (a)(1) or a court facilities assessment under Government Code, section 70373, subdivision (a)(1)." (*Kopp*, *supra*, at p. 30).

At oral argument, the parties agreed remand is appropriate to give appellant the opportunity to challenge imposition of the $370 fine/fees pursuant to *Kopp*, *supra*, 19 Cal.5th 1. However, on this record, it would not serve the interests of justice or judicial economy to require remand. Appellant has been incarcerated for most of his adult life. Given his current sentence, he will presumably be incarcerated for the rest of his life. Additionally, the probation report does not indicate he has any assets or property. Accordingly, we exercise our authority pursuant to section 1260 and strike the fines and fees.

### Disposition

We modify the judgment (§ 1260) and strike the $300 restitution fine (§ 1202.4, subd. (b)), $300 parole revocation fine (§ 1202.45), $40 court operations assessment fee (§ 1465.8), and $30

11

court facilities assessment fee (Gov. Code, § 70373).  The clerk of the superior court shall prepare an amended abstract of judgment striking these fines and fees and send a certified copy to the Department of Corrections and Rehabilitation.  The judgment is affirmed in all other respects.

NOT TO BE PUBLISHED.


YEGAN, Acting P. J.


We concur:


BALTODANO, J.


CODY, J.

Dorothy Shubin, Judge
Superior Court County of Los Angeles
_____

Law Offices of Aaron J. Schechter and Aaron J. Schechter, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Kenneth C. Byrne, Supervising Deputy Attorney General, Ana R. Duarte and Lauren N. Guber, Deputy Attorneys General, for Plaintiff and Respondent.